192 F.3d 28 (1st Cir. 1999)
 WILTON K. ALMON, Plaintiff, Appellee,
v.
JANET RENO, ET AL., Defendants, Appellants.
 No. 98-2055.
 United States Court of Appeals for the First Circuit.
 Heard Aug. 3, 1999.
Decided Sept. 21, 1999.
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTSAlison Marie Igoe, Trial Attorney, Office of Immigration Litigation, with whom Frank W. Hunger, Assistant Attorney General, U.S. Department of Justice, Civil Division, and Christopher C. Fuller, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for appellant.
 Randy Olen for appellee.
 Before Torruella, Chief Judge, Hill* and Cyr, Senior Circuit Judges.
 TORRUELLA, Chief Judge.
 
 
 1
 Petitioner-appellee Wilton K. Almon is a native and citizen of Jamaica who entered the United States as an immigrant on March 29, 1980, at the age of nine. On October 24, 1996, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause, charging Almon with deportability as an aggravated felon pursuant to § 241(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(2)(A)(iii).[1] The basis of the charges of deportability were three separate criminal convictions: (1) a September 16, 1996 conviction for entering a dwelling with intent to commit larceny; (2) a January 9, 1995 conviction for possession of a stolen motor vehicle; and (3) a January 9, 1995 conviction for assault with a dangerous weapon.
 
 
 2
 On June 25, 1997, an immigration judge found Almon deportable and ineligible for a § 212(c) waiver of deportation by operation of § 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Almon was ordered deported to Jamaica. The BIA affirmed the deportation order on May 1, 1998.
 
 
 3
 Prior to April 24, 1996, Almon would have been able to apply for a discretionary waiver of deportation under § 212(c) of the INA. See 8 U.S.C. § 1182(c) (1995).[2] However, effective April 24, 1996, § 440(d) of the AEDPA amended § 212(c) and rendered Almon ineligible for such a waiver. See AEDPA, Pub. L. No. 104-132, Title IV, § 440(d), 110 Stat. 1214, 1277 (1996).
 
 
 4
 Almon filed a petition for a writ of habeas corpus in the United States District Court for the District of Massachusetts, alleging that § 440(d) of the AEDPA violates his right to equal protection by irrationally denying eligibility for § 212(c) relief to aliens who, like himself, are in deportation proceedings, while preserving such relief for aliens in exclusion proceedings. The district court agreed with Almon, granting his petition, and remanding his case to the BIA for a discretionary determination of the merits of Almon's application for relief under the old INA § 212(c). This appeal followed.
 
 DISCUSSION
 
 5
 In order to better understand Almon's equal protection claim, some background information is necessary. Deportable aliens are aliens presently residing in the United States, but who are subject to deportation on various grounds. See 8 U.S.C. § 1251(a) (1996). Excludable aliens are those who seek to enter the United States to set up residence, and whom the Attorney General has the power to exclude. See 8 U.S.C. § 1182(a) (1996). Prior to the passage of the AEDPA, § 212(c) of the INA provided that excludable aliens who were legal permanent residents of the United States for seven consecutive years and who traveled abroad voluntarily and temporarily could be re-admitted at the discretion of the Attorney General. See supra note 2. By its terms, § 212(c) discretionary relief applied specifically and exclusively to excludable aliens seeking readmission, and not to aliens in deportation proceedings. See id.
 
 
 6
 However, in 1956, in Matter of G.A., 7 I. & N. Dec. 274 (BIA 1956), the BIA permitted a criminal alien in deportation proceedings to apply for a § 212(c) waiver. See Matter of G.A., 7 I. & N. at 275. The petitioner in that case was convicted of a drug offense in 1947. See id. at 274. In 1952, he briefly left the United States, and upon his return was readmitted. See id. The INS did not initiate deportation proceedings against G.A. until 1956. See id. From 1947, the date of his drug conviction, to 1956, G.A. did not suffer any additional convictions. See id. at 274-75. In holding that G.A. was eligible to apply for discretionary relief under § 212(c), the BIA reasoned that if the Attorney General exercised his discretion under § 212(c) and waived the ground of excludability based upon G.A.'s 1947 criminal conviction when G.A. sought readmission to the United States in 1952, a deportation proceeding based upon the same criminal conviction could not thereafter be initiated. See Matter of G.A., 7 I. & N. at 275-76.
 
 
 7
 After the BIA's holding in Matter of G.A., resident criminal aliens were routinely considered eligible for discretionary relief under § 212(c) if, at some point after their convictions, they had temporarily departed the United States, been readmitted, and were in deportation proceedings. See, e.g., Matter of Tanori, 15 I. & N. Dec. 566, 568 (BIA 1976) ("Under section 212(c) of the Act, a waiver of the ground of inadmissibility may be granted in a deportation proceeding when, at the time of the alien's last entry, he was inadmissible because of the same facts which form the basis of his deportability."); Matter of Edwards, 10 I. & N. Dec. 506 (BIA 1963) (holding that the fact that a resident criminal alien's status may have changed from excludable to deportable does not preclude the exercise of discretionary relief contained in § 212(c)). At the same time, the BIA declined to extend § 212(c) relief to otherwise eligible resident criminal aliens in deportation proceedings who had not departed the country after being convicted. See, e.g., Matter of Arias-Uribe, 13 I. & N. Dec. 696 (BIA 1971). In this way, the BIA distinguished between two classes of deportable aliens: those who had traveled abroad after their convictions, and those who had never left the country.
 
 
 8
 This distinction did not go unnoticed. In 1976, in Francis v. INS, 532 F.2d 268 (2d Cir. 1976), the Second Circuit held that the BIA's distinction between these two classes of deportable aliens violated equal protection. See 532 F.2d at 273. Like G.A., the petitioner in Francis was in deportation proceedings but, unlike G.A., had never left the United States at any time after his conviction. See id. at 269. For this reason, the BIA deemed Francis ineligible for § 212(c) relief and ordered him deported. In granting Francis's request for a declaration of his eligibility for § 212(c) relief, the Second Circuit explained that the government had failed to suggest any reason why a deportable alien's failure to travel abroad after a conviction should be a crucial factor in determining his eligibility for a § 212(c) waiver. See id. at 273. Therefore, the Francis court concluded that distinguishing between different categories of deportable aliens based on whether they had departed and returned to the United States was "wholly unrelated to any legitimate government interest." Id. The remedy for this constitutional violation was a remand to the BIA for a determination of the merits of Francis' application for a § 212(c) waiver.
 
 
 9
 Prior to the passage of the AEDPA, Almon, like the petitioner in Francis, would have been eligible for § 212(c) relief. See Matter of Silva, 16 I. & N. Dec. 26 (BIA 1976) (holding that, after Francis, § 212(c) relief may be granted to permanent resident aliens in deportation proceedings). However, effective April 24, 1996, § 440(d) of the AEDPA amended the last sentence of § 212(c) to read: "[t]his section shall not apply to an alien who is deportable by reason of having committed [various enumerated criminal offenses]." AEDPA § 440(d), 110 Stat. 1214, 1277 (emphasis added). Although immigration judges initially applied this exclusion from § 212(c) eligibility to both excludable and deportable criminal aliens, the BIA in In re Fuentes-Campos, Int. Dec. 3318 (BIA 1997), interpreted § 440(d) as excluding only aliens in deportation proceedings from eligibility for § 212(c) relief. It is this interpretation of § 440(d), limiting eligibility for § 212(c) relief to criminal aliens in exclusion proceedings only, that Almon claims violates his right to equal protection.[3] Specifically, Almon contends that there is no rational basis for treating two aliens convicted of exactly the same crime differently simply because one has chosen to leave the country while the other has not. We disagree.
 
 
 10
 Almon first argues that the Second Circuit's holding in Francis compels us to find the BIA's interpretation of § 440(d) violative of equal protection guarantees. However, Almon's equal protection claim is very different from that litigated in Francis. First, Almon challenges a different statutory classification: namely, the distinction between excludable and deportable aliens. Second, even assuming arguendo that excludable aliens and deportable aliens are similarly situated with respect to § 440(d), the government in this case has advanced a rational and legitimate reason for the statute's disparate treatment of excludable and deportable aliens. We therefore reject Almon's argument to the extent it is based on the Second Circuit's decision in Francis.
 
 
 11
 We turn next to the merits of Almon's equal protection claim. It is well established that a challenged classification that does not involve a suspect class or impinge upon fundamental rights is accorded a strong presumption of validity. See Heller v. Doe, 509 U.S. 312, 319 (1993). Such a classification must be upheld if it is rationally related to a legitimate governmental purpose. See id. at 320. Moreover, under this minimal standard of review, the government need not actually articulate at any time the purpose or rationale supporting its classification. See id. at 320. Instead, a classification must be upheld against an equal protection challenge "if there is any reasonably conceivable set of facts that could provide a rational basis for the classification" whether the basis has a foundation in the legislative record or not. Heller, 509 U.S. at 320 (quoting FCC v. Beach Communications Inc., 508 U.S. 307, 313 (1993)). Under this standard of review, we conclude that there exists a rational basis for the disparate treatment of excludable and deportable aliens under § 440(d) of the AEDPA.
 
 
 12
 We conclude that in limiting § 440(d)'s restrictions to criminal aliens in deportation proceedings, Congress advanced the legitimate legislative goal of expediting the deportation of criminal aliens currently residing within our borders. See LaGuerre v. Reno, 164 F.3d 1035, 1041 (7th Cir. 1998); Mattis v. Reno, 44 F. Supp. 2d 379, 385-86 (D. Mass. 1999). But see Wallace v. Reno, 39 F. Supp. 2d 101, 106-08 (D. Mass. 1999). The Congressional record leading up to the enactment of the AEDPA indicates that the number of deportable criminal aliens greatly exceeds the number of excludable criminal aliens. See H.R. Rep. No. 104-469(I) (1996) (1996 WL 168955 at 4-85) (reporting that in 1995 the INS deported approximately 29,255 criminal aliens and excluded approximately 2,738). Given these figures, the more lenient treatment of excludable criminal aliens under § 440(d) makes rational sense. With the passage of § 440(d), Congress created an incentive for deportable criminal aliens to leave the country without their having to be ordered to leave at the government's expense. See LaGuerre, 164 F.3d at 1041. As the Seventh Circuit explained: "To induce their voluntary departure, a little carrot is dangled before them consisting of the opportunity to seek a waiver should they seek to return to the country and by doing so trigger exclusion proceedings." LaGuerre, 164 F.3d at 1041. Section 440(d) clearly accomplishes this legitimate governmental purpose, and therefore must be upheld.
 
 CONCLUSION
 
 13
 For the reasons stated above, we reverse the decision of the district court.
 
 
 
 Notes:
 
 
 *
 Of the Eleventh Circuit, sitting by designation.
 
 
 [1]
 For aliens placed in immigration proceedings after April 1, 1997, this provision was recodified at 8 U.S.C. § 1227(a)(2)(A)(iii).
 
 
 [2]
 Prior to April 24, 1996, § 212(c) of the INA stated in relevant part:
 Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.
 8 U.S.C. § 1182(c) (1995).
 
 
 [3]
 On April 1, 1997, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Among other things, this Act expressly repealed § 212(c) of the INA as amended by § 440(d) of the AEDPA, thus barring any discretionary relief for either deportable or excludable aliens. See IIRIRA § 304(b), Pub. L. 104-208, 110 Stat. 3009. However, the IIRIRA did not take effect until April 1, 1997 and therefore did not affect deportation proceedings pending before that date. See IIRIRA § 309(c)(1). In this case, the INS issued its Order to Show Cause on October 24, 1996. Therefore, the IIRIRA amendments do not apply to Almon's deportation proceedings.