**Farid Masud ASAD**

v.

**Janet RENO, et al.**

**No. 3:99–0267.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Oct. 7, 1999.

887

Linda Rose, Nashville, TN, for plaintiff.

Rachel Waterhouse, Nashville, TN, for defendant.

## MEMORANDUM

CAMPBELL, District Judge.

### I. *Introduction*

Pending before the Court is Respondents' Motion To Dismiss Petition For Writ Of Habeas Corpus (Docket No. 9). The Court has reviewed the pleadings and briefs filed by both parties, and the entire record in this case. For the reasons set forth below, the Motion is GRANTED, and the case is DISMISSED.

### II. *Procedural and Factual Background*

Petitioner, Farid Masud Asad, brought this action, pursuant to the Court's habeas corpus jurisdiction under 28 U.S.C. § 2241, seeking to have the Court establish his eligibility for a waiver of deportation under former Section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c)[1]. Petitioner alleges that he is an Israeli Palestinian who became a lawful permanent resident of the United States in 1989 (Petition (Docket No. 1)). On July 6,

---

1. Section 212(c) was repealed in the IIRIRA, and was replaced by Section 240A, 8 U.S.C. § 1229b. *See* IIRIRA, § 304(a), (b); *Musto v.* *Perryman,* 193 F.3d 888, 890 n. 3 (7th Cir. 1999).

1992, Petitioner was found guilty of certain drug offenses after a jury trial, and was sentenced to 63 months of imprisonment. (*Id.*).

· In December, 1992, the Immigration and Naturalization Service served Petitioner with an Order to Show Cause why he should not be deported, but took no further action. (*Id.*). On August 19, 1996, Petitioner was served with a second Order to Show Cause, and on March 31, 1997, Petitioner filed an application for a waiver of deportation under former Section 212(c) of the INA, 8 U.S.C. § 1182(c). (*Id.*)

At Petitioner's deportation hearing, held on July 7, 1997, the Immigration Judge denied Petitioner's Section 212(c) application, finding that Petitioner was ineligible for such a waiver under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104–132, 110 Stat. 1214 ("AEDPA") because his deportation was based upon his conviction of an aggravated felony. (Exhibit A to Petition). On November 6, 1996, the Board of Immigration Appeals ("BIA") affirmed the order of the Immigration Judge. (Exhibit B to Petition). Petitioner appealed to the Sixth Circuit, and that court dismissed his appeal on March 15, 1999, for lack of appellate jurisdiction under the Illegal Immigration Reform and Immigrant Responsibility Act, Pub.L.No. 104–208, 110 Stat. 3009 ("IIRIRA"). (Exhibit C to Petition).

### III. *Analysis*

#### A. *Res Judicata/Collateral Estoppel/Jurisdiction*

In their Motion To Dismiss, Respondents first argue that the Sixth Circuit's decision that it was without jurisdiction to hear Petitioner's appeal in the deportation proceeding is binding on this Court through the doctrines of res judicata and collateral estoppel.

In denying Petitioner's appeal, the Sixth Circuit stated:

> In this case, however, we are precluded from exercising appellate jurisdiction by amendments to the immigration statute made by the Illegal Immigration Reform

and Immigrant Responsibility Act, Pub.L. 104–208, 110 Stat. 3009 (IIRIRA). Those amendments provide that no court shall have jurisdiction to review a final order of deportation against an alien deportable by virtue of the commission of an aggravated felony. 8 U.S.C. § 1252(2)(C). Pursuant to § 309(c)(4)(G) of the new law, the amendments specifically apply to aliens in deportation proceedings as of the statute's effective date.

(Exhibit 3 to Petition).

The Sixth Circuit has explained that the doctrine of res judicata includes two separate concepts—issue preclusion and claim preclusion. *Wilkins v. Jakeway,* 183 F.3d 528, 532 (6th Cir.1999). According to the court, claim preclusion, or "true res judicata," refers to " 'the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.' " *Id.* (quoting *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984)). To establish claim preclusion, a litigant must show the following four elements: (1) a final decision on the merits; (2) a subsequent action between the same parties or their privies; (3) an issue in a subsequent action which should have been litigated in the prior action; and (4) an identity of the causes of action. *Id.*

Issue preclusion, or collateral estoppel, holds that " 'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.' " *Hickman v. Commissioner of Internal Revenue,* 183 F.3d 535, 537 (6th Cir.1999)(quoting *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)). Issue preclusion requires a litigant to establish the following four elements: (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation;

(2) the issue must have been actually litigated and decided in the prior action; (3) the issue must have been necessary and essential to a judgment on the merits in the prior litigation; and (4) the party to be estopped was a party to the prior litigation or in privity with such a party. *Id.*

■ Respondents have not established the elements necessary to either claim preclusion or issue preclusion in this case because the Sixth Circuit's conclusion that it was without jurisdiction to review a final order of deportation on appeal from the BIA does not answer the question of whether this Court has habeas corpus jurisdiction of this action under 28 U.S.C. § 2241. In concluding that it was without appellate jurisdiction, the Sixth Circuit cited Section 304(c)(4)(G) of the IIRIRA. That provision states that in cases in which a final order of deportation is entered more than 30 days after enactment of the IIRIRA, as in this case [2], "there shall be no appeal permitted" if the person is deportable by virtue of having been convicted of a crime. IIRIRA, § 309(c)(4)(G). Several courts, including the Sixth Circuit, have construed this provision to apply to appeals of BIA deportation orders only, and not to habeas corpus petitions under 28 U.S.C. § 2241. *Pak v. Reno,* —— F.3d ——, Case. No. 98–3852, 1999 Fed.App. 0358P (6th Cir. Oct.6, 1999); *Requena–Rodriguez v. Pasquarell,* 190 F.3d 299, 304–05 (5th Cir.1999); *Jurado–Gutierrez v. Greene,* 190 F.3d 1135, 1142–46 (10th Cir.1999); *Shah v. Reno,* 184 F.3d 719, 722–23 (8th Cir.1999); *Mayers v. United States Dept. of Immigration and Naturalization,* 175 F.3d 1289, 1297–98 (11th Cir. 1999); *Sandoval v. Reno,* 166 F.3d 225, 235 (3rd Cir.1999). *But see Musto,* 193 F.3d at 890–891.

Therefore, the Sixth Circuit appeal is not res judicata in this case because it involved a different cause of action—appeal of a BIA order of deportation. Similarly, the court's decision regarding appellate jurisdiction does not address whether this Court has jurisdiction under 28 U.S.C. § 2241. Accordingly, the Court is not persuaded by Respondents' res judicata and collateral estoppel arguments.

Respondents also argue outright that Section 309(c)(4)(G) strips this Court of habeas corpus jurisdiction. As explained above, however, that Section applies to appellate jurisdiction, and not to petitions filed under 28 U.S.C. § 2241.

### B. *Retroactivity and Equal Protection*

Next, Respondents argue that Petitioner's claims that the Immigration Judge violated the Due Process Clause by applying AEDPA Section 440(d) to Petitioner's case, and that Section 440(d) violates the Equal Protection Clause are not substantial constitutional arguments, and therefore, are not cognizable in an action brought under 28 U.S.C. § 2241. The Court notes that, in a recent decision, the Sixth Circuit held that jurisdiction under Section 2241 is not limited to constitutional claims. *Pak,* —— F.3d at ——, 1999 Fed. App. 0358P. The Court need not dwell on this issue, however, because Petitioner's claims fail on the merits.

Prior to the enactment of the AEDPA, Section 212(c) of the INA permitted the Attorney General, under certain circumstances, to exercise his or her discretion to waive the deportation of an otherwise deportable alien. Section 440(d) of the AEDPA, which was enacted on April 24, 1996, provides that Section 212(c) relief is not available to a person who "is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered in section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i)." [3] But the AEDPA does

---

**2.** The IIRIRA was enacted on September 30, 1996, more than 30 days after July 9, 1997. the date the final order of deportation was entered in this case.

**3.** Petitioner does not argue that his conviction falls outside the coverage of Section 440(d).

not specify when Section 440(d) is to take effect. Several courts have addressed this issue, and have held that Section 440(d) does not apply to cases that were pending on the date the AEDPA was enacted. *Pak,* — F.3d at ——, 1999 Fed.App. 0358P; *Shah,* 184 F.3d at 724–25; *Mayers,* 175 F.3d at 1303–04; *Sandoval,* 166 F.3d at 239–41; *Henderson v. Immigration and Naturalization Service,* 157 F.3d 106, 128–30 (2nd Cir.1998); *Goncalves v. Reno,* 144 F.3d 110, 128–33 (1st Cir.1998).

■ Petitioner does not argue, however, that his case was pending at the time the AEDPA was enacted. Instead, Petitioner argues that even if his case was initiated after the AEDPA was enacted, Section 440(d) should not be applied to cases involving convictions that pre-date the AEDPA. Several courts have considered this same argument and have rejected it relying on the retroactivity analysis set forth by the Supreme Court in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). *Requena–Rodriguez,* 190 F.3d at 305–06; *DeSousa v. Reno,* 190 F.3d 175, 185–187 (3rd Cir. 1999); *Jurado—Gutierrez,* 190 F.3d at 1146–51.

In *Landgraf,* 114 S.Ct. at 1505, the Court explained:

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would

operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

Applying that analysis here, the Court concludes that Congressional intent regarding the retroactivity of Section 440(d) is not clear. The only reference to an effective date for the provisions of Section 440, as set forth in subsection (f), is a reference to subsection (e): "The amendments made by subsection (e) shall apply to convictions entered on or after the date of the enactment of this Act, except that the amendment made by subsection (e)(3) shall take effect as if included in the enactment of section 222 of the Immigration and Nationality Technical Corrections Act of 1994." AEDPA, § 440(f). Other provisions of the AEDPA specify that they are to apply to cases initiated after the date AEDPA was enacted. *See* AEDPA § 435(b) (provision expanding criteria for deportation for crimes of moral turpitude is made to apply to "aliens against whom deportation proceedings are initiated after the date of the enactment of this Act.").

On the other hand, certain sections are made applicable to cases initiated before the AEDPA was enacted. *See* AEDPA § 413(g) (provision barring certain relief for alien terrorists specifically made to apply to "applications filed before, on, or after [the date of enactment] if final action has not been taken on them before such date."); § 421(b) (provision restricting discretionary relief for asylum applicants made to apply "to asylum determinations made on or after [the date of enactment].").[4]

Thus, there is no clear indication in the AEDPA of whether Congress intended for Section 440(d) to apply to pre-enactment convictions. Given this ambiguity, the *Landgraf* analysis directs that the Court determine whether Section 440(d) has a

4. One court has found that the language of Section 440(d) itself suggests that the Section 212(c) waiver limitation would apply to pre-enactment convictions. Section 440(d) limits

the availability of 212(c) waivers to "an alien who is deportable by reason of *having committed* any criminal offense..." (emphasis added). *See DeSousa,* at 185.

"retroactive effect" as applied to the Petitioner. *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997).

The *Landgraf* Court discussed the considerations involved in such a determination:

> A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, ... or upsets expectations based in prior law.... Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.

114 S.Ct. at 1499 (footnote and citations omitted). In making retroactivity determinations, the courts should be guided by "familiar considerations of fair notice, reasonable reliance and settled expectations." *Id.*

Considering the nature and extent of the change made by Section 440(d), and the connection between that change and Petitioner's pre-enactment convictions, the Court agrees with the Third, Fifth and Tenth Circuits that Section 440(d) does not have the unfair retroactive effect discussed in *Landgraf* when applied to convictions that pre-date the AEDPA. At the time of Petitioner's criminal conduct, the consequences of that conduct were clear—he was subject to criminal sanctions and deportation. Section 212(c) merely provided a possible, totally discretionary, avenue of relief from deportation. The Court is simply not persuaded that Petitioner reasonably relied on the availability of that relief when he committed the drug offenses for which he was convicted, or that the subsequent restriction on that relief unfairly frustrates Petitioner's settled expectations in that regard.

As the Third Circuit explained in considering the retroactive effect of a previous restriction [5] on Section 212(c):

> Like statutes altering the standards for injunctive relief, this change has only a prospective impact. It is not designed to remedy the past but only to affect petitioner's future status with respect to the legality of his presence in the United States.... [L]ike legislation altering procedural rights, the relevant amendments in this case regulate secondary rather than primary conduct and infringe on no significant reliance interest. Given the facts that petitioner's pre–1987 conduct clearly subjected him to deportation as well as criminal sanctions, and that § 212(c), as it then existed, offered relief from the former only at the unfettered discretion of the Attorney General, petitioner does not, and could not, contend that his conduct was undertaken in reliance on the then current version of § 212(c).

*Scheidemann v. Immigration and Naturalization Service,* 83 F.3d 1517, 1523 (3rd Cir.1996).[6]

Petitioner states in his Petition that he relied on the availability of the Section 212(c) waiver in deciding not to take an appeal from his criminal convictions. Accepting this representation as true, however, the Court does not consider such reliance to be reasonable. As the court stated in *Requena–Rodriguez:*

---

**5.** Congress amended Section 212(c) in 1990 to bar the availability of the waiver remedy to those convicted of aggravated felonies, who have served a term of imprisonment of at least five years for that felony. Immigration Act of 1990, Pub.L. No. 101–649, § 511(a), 104 Stat. 4978 (1990); Pub.L. No. 102–232, § 306(a)(10), 105 Stat. 1733 (1991).

**6.** Other courts, including the Sixth Circuit, have also concluded that the prior amendment limiting Section 212(c) relief did not have a retroactive effect on pre-amendment convictions. *Samaniego–Meraz v. INS,* 53 F.3d 254, 256–57 (9th Cir.1995); *Campos v. INS,* 16 F.3d 118, 121–22 (6th Cir.1994); *De Osorio v. INS,* 10 F.3d 1034, 1042 (4th Cir. 1993).

[Petitioner] could not seriously suggest that he would have refrained from sexually molesting his children, or changed his plea, had he only known that in addition to suffering a prison term and a finding of deportability, he would not be eligible to be considered for a possible last-ditch reprieve from the Attorney General. Any of Requena's upset expectations were inadequate to attach new legal consequences to his pre-AED-PA conduct.

190 F.3d at 308.

In conclusion, applying Section 440(d) to Petitioner's pre-enactment convictions simply does not raise concerns about fair notice, reasonable reliance, and settled expectations that are present when application of a statute has a true retroactive effect. Petitioner's Due Process Claim based on the retroactivity of Section 440(d) is without merit.

Alternatively, Petitioner argues that application of Section 440(d) to his case violates the Equal Protection Clause because, according to the BIA,[7] the provision applies only to deportation proceedings and not to exclusion proceedings.[8] This distinction, argues the Petitioner, is not rationally related to a legitimate governmental interest.

Before addressing the Petitioner's Equal Protection argument, the Court notes that some courts disagree with the BIA's construction of Section 440(d). See, e.g., United States v. Estrada–Torres, 179 F.3d 776 (9th Cir.1999). Those courts opine that the amendment to Section 212(c) applies to both excludable and deportable aliens. Id. Because neither party has argued that the BIA's interpretation is in error, however, the Court will not address the issue.

■ The legislative classification in this case is between different groups of aliens and implicates neither a fundamental right, nor a suspect class. DeSousa, 190 F.3d at 184. Consequently, the classification violates the Equal Protection Clause only if the distinction it creates is not rationally related to a legitimate governmental purpose. Central State University v. American Association of University Professors, 526 U.S. 124, 119 S.Ct. 1162, 1163, 143 L.Ed.2d 227 (1999).

The courts that have considered the Equal Protection argument raised by Petitioner have determined that eliminating the availability of Section 212(c) relief to deportable aliens serves the legitimate objective of expeditiously removing aliens convicted of crimes from the country. Almon v. Reno, 192 F.3d 28, 32 (1st Cir. 1999); Requena–Rodriguez, 190 F.3d at 308; DeSousa, 190 F.3d at 183–84; Jurado–Gutierrez, 190 F.3d at 1151–52. The Court agrees with this reasoning. Convicted aliens who have not yet entered the country do not pose the same public safety risk as those who are already here. Jurado–Gutierrez, 190 F.3d at 1151–52; DeSousa, at 183–84 In addition, the First Circuit has pointed out that the number of deportable criminal aliens greatly exceeds the number of excludable criminal aliens. Almon v. Reno, 1999 WL 721637, at *4.

Petitioner cites Francis v. Immigration and Naturalization Service. 532 F.2d 268 (2nd Cir.1976) to support his argument. In Francis, the Second Circuit held that a decision of the BIA declining to extend Section 212(c) relief to an otherwise eligible alien who had not departed the country since his narcotics conviction, while extending the same relief to a convicted alien who had departed and returned to the United States, created an irrational distinction and violated the Equal Protection Clause. 532 F.2d at 272–73. The distinction found unconstitutional by the Francis ·

---

**7.** See In re Fuentes–Campos, Interim Decision 3318, 1997 WL 269368 (BIA May 14, 1997).

**8.** This distinction was removed by Section 240 of the IIRIRA, 8 U.S.C. § 1229a, which created one form of "removal" proceeding to include both deportation and exclusion proceedings. IIRIRA, § 304(a). That provision does not apply to this case, however, which was initiated prior to enactment of the IIRIRA. IIRIRA, § 309.

Court was between deportable aliens who had and had not temporarily left the country. *See Almon v. Reno*, 1999 WL 721637, at \*3; *DeSousa*, at 183–84; *Requena–Rodriguez*, at 308.

In this case, by contrast, the distinction is between aliens in deportation proceedings and those in exclusion proceedings. As noted above, there are rational, legitimate reasons for distinguishing between these two groups in determining the availability of Section 212(c) relief. Accordingly, Petitioner's Equal Protection claim is without merit.

### IV. *Conclusion*

For the reasons set forth above, the Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2241. Accordingly, Respondents' Motion to Dismiss is granted, and this case is dismissed.

It is so ORDERED.