# United States Court of Appeals
## For the First Circuit

No. 00-1018

ANTONIO VIEIRA GARCÍA,

Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF

THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, <u>Circuit Judge</u>,
Bownes, <u>Senior Circuit Judge</u>,
and Stahl, <u>Circuit Judge</u>.

<u>Thomas L. Mirza</u>, with whom <u>Audette, Bazar & Gonzalez, Inc.</u>, were on brief, for petitioner.

<u>Randy Olen</u> and <u>Olen Law Offices</u> on brief for Rhode Island Affiliate, American Civil Liberties Union, amicus curiae.

<u>Julia K. Doig</u>, Attorney, Office of Immigration Litigation, United States Department of Justice, with whom, <u>David W. Ogden</u>, Assistant Attorney General, Civil Division, <u>Mark C. Walters</u>, Assistant Director, Office of Immigration Litigation, and <u>Margaret J. Perry</u>, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.

**BOWNES, <u>Senior Circuit Judge</u>.**  This case is an attack on a deportation order holding the petitioner removable as charged.  The issue is whether the immigration judge (IJ) and the Board of Immigration Appeals (BIA) properly found that the petitioner was "convicted" and therefore subject to deportation when he was seventeen years of age at the time he committed the criminal offense.

## I.

We state the facts as recited in the administrative record.  Petitioner Antonio Vieira Garcia is a permanent resident of the United States.  Originally from Cape Verde, he entered this country with his family on December 22, 1987, when he was nine years old.  In March 1996, the petitioner committed a criminal offense,[1] and the State of Rhode Island filed a

---

[1]     We are not entirely sure what the offense was because that charge is not part of the current proceeding.  In his brief, the petitioner says that he committed an assault with a deadly weapon.  The administrative record contains no copies of the criminal records from the petitioner's first offense.  The petitioner now, for the first time, attempts to supplement the record by submitting an appendix with copies of those court records.  The respondent has moved to strike the records from the appendix on the grounds that they are not properly before this court because they pertain to matters outside the administrative record.  We agree and grant the respondent's motion to strike.  <u>See</u> 8 U.S.C. § 1252(b)(4)(A) ("the court of

delinquency petition in Rhode Island Family Court. The petition was dismissed, however, and the petitioner was charged as an adult.[2] As we understand it, the case against the petitioner was eventually dropped.

On August 26, 1996, the petitioner attempted to steal platinum tire rims from an automobile in violation of R.I. Gen. Laws §§ 11-41-6, 11-41-5, and 11-41-1. At the time of this offense, the petitioner was four days shy of his eighteenth birthday. Because he had been waived out of juvenile court after the first offense, he was charged as an adult for the second offense. See R.I. Gen. Laws § 14-1-7.1(c) ("waiver of jurisdiction over a child . . . shall constitute a waiver of jurisdiction over that child for the offense upon which the motion is based as well as for all pending and subsequent offenses of whatever nature . . . .").

The petitioner pled guilty to the charges and was sentenced to a term of imprisonment of ten years, with two years to serve, eight years suspended, and eight years probation. The

---

appeals shall decide the petition [for review] only on the administrative record on which the order of removal is based.").

[2] It is not entirely clear whether the defendant voluntarily waived himself out of the delinquency proceedings. That fact is irrelevant, however; the fact remains that he was waived out of delinquency proceedings and was charged as an adult.

Immigration and Naturalization Service ("INS") brought removal proceedings against the petitioner on the ground that he was subject to removal from the United States pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), as amended, because he was convicted, after admission to the United States, of an aggravated felony as described in INA § 101(a)(43)(G) ("a theft offense . . . for which the term of imprisonment [is] at least one year").

In his removal proceedings before the IJ, the petitioner argued that the IJ should apply federal law for purposes of determining deportability. Under the Federal Juvenile Delinquency Act ("FJDA"), 18 U.S.C. § 5031, a juvenile is defined as one who has not attained his eighteenth birthday. The petitioner argued that because he was only seventeen, "the offense was a delinquency and not a conviction for immigration purposes." The IJ disagreed and rejected the petitioner's plea to apply federal law. The IJ noted that the proceedings took place within the United States, as opposed to a foreign nation, and that the petitioner had been treated as an adult in Rhode Island courts, not as a juvenile. The IJ held that the petitioner had been "convicted" of an aggravated felony after admission and was deportable as charged. The IJ ordered him removed to Cape Verde.

The petitioner appealed the IJ's order to the BIA, repeating his argument that because he was in federal immigration proceedings, whether or not he has a "conviction" for immigration purposes should be determined by federal law, not Rhode Island state law. He argued that applying the FJDA, as opposed to state law, would avoid disparate treatment for the same offense depending solely on where the offense had occurred.

The BIA, in a per curiam decision, dismissed the petitioner's appeal. The BIA applied the new definition of "conviction" found at § 101(a)(48) of the INA, which was introduced as part of the Illegal Immigration Reform and Immigrant Rehabilitation Act of 1996 ("IIRIRA"). See IIRIRA, Pub. L. No. 104-208, § 322, 110 Stat. 3009.

The BIA stated that "[i]n passing this legislation [the IIRIRA], Congress could have, but did not, exclude juvenile offenses . . . ." The BIA also commented on the legislative history of the IIRIRA, noting that the definition of conviction was deliberately broadened beyond that of the prior definition.

The BIA ultimately determined that Congress's intent to expand the definition of conviction is clear and there is "no need to adopt a federal standard for adjudicating removal cases

for those aliens who have received convictions prior to their 18th birthday."  It dismissed the appeal.

On appeal to this court, the petitioner reiterates the same arguments that were presented to both the IJ and the BIA. He further contends that the BIA failed to articulate any reasoned explanation for treating him differently from other classes of juveniles and thus denied him his constitutional right to equal protection.

## II.

We bifurcate our analysis:  First, we address the BIA's construction of the statute defining "conviction" for immigration purposes as it relates to the particular facts in this case.  Then we address the petitioner's constitutional claim that the BIA violated his right to equal protection.

## A. Was the petitioner "convicted"?

"We review de novo an agency's construction of a statute that it administers, subject, however, to established principles of deference." Herrera-Inirio v. INS, 208 F.3d 299, 304 (1st Cir. 2000) (citing INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999)). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984). "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843. "Because agency officials acting in the immigration context exercise especially sensitive political functions that implicate questions of foreign relations, deference to administrative expertise is particularly appropriate." Herrera-Inirio, 208 F.3d at 304 (internal citation and quotation marks omitted).

The path that leads to the current definition of "conviction" is a long and winding one. In 1988, the BIA, in Matter of Ozkok, 19 I. & N. Dec. 546, 551-52 (BIA 1988), attempted to ensure uniformity by creating a three-part

definition of "conviction."[3]  That effort to produce uniformity

failed and, in 1996, Congress enacted the IIRIRA, which, among

other things, added the current definition of conviction to the

INA.  See INA § 101(a)(48)(A); 8 U.S.C. § 1101(a)(48)(A).  The

current definition of "conviction" as it relates to immigration

is as follows:

> The term "conviction" means, with respect to
> an alien, a formal judgment of guilt of the
> alien entered by a court or, if adjudication
> of guilt has been withheld, where--
>
> (i) a judge or jury has found the
> alien guilty or the alien has entered a plea
> of guilty or nolo contendere or has admitted
> sufficient facts to warrant a finding of
> guilt, and

---

[3]     In Matter of Ozkok, the BIA held that a "conviction"
for immigration purposes consisted of the following elements:

>     (1) a judge or jury has found the alien guilty or
> he has entered a plea of guilty or nolo contendere or
> has admitted sufficient facts to warrant a finding of
> guilty;
>
>     (2) the judge has ordered some form of punishment,
> penalty, or restraint on the person's liberty to be
> imposed . . . ; and
>
>     (3) a judgment or adjudication of guilt may be
> entered if the person violates the terms of his
> probation or fails to comply with the requirements of
> the court's order, without availability of further
> proceedings regarding the person's guilt or innocence
> of the original charge.

Id.

-8-

> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

INA § 101(a)(48)(A).

In Herrera-Inirio, we held that it was Congress's intent to "broaden[] the scope of the definition of 'conviction' beyond that adopted by the Board of Immigration Appeals in Matter of Ozkok." 208 F.3d at 305 (quoting H.R. Conf. Rep. No. 104-828, at 244 (1996)). We stated that "[t]his language leaves nothing to the imagination." Id. at 304.

We follow that holding in the present case. The statute is clear and unambiguous. Applying the statute, we hold that the petitioner does have a "conviction." He does not contest that he pled guilty to the charges levied against him or that the judge ordered punishment in the form of imprisonment. What he does contest is the fact that he was a juvenile at the time of the offense and therefore should not be found to have a "conviction."

He argues that we should apply the FJDA to his case and conclude that he does not have a "conviction" for immigration purposes. Such a determination would allow him to remain in this country. The petitioner argues that because he was only seventeen, "the offense was a delinquency and not a conviction for immigration purposes." We disagree. The petitioner was

adjudicated as an <u>adult</u> in the Rhode Island state court.  The
BIA held:

> By the time an alien has been served a
> Notice to Appear and appears within the
> jurisdiction of the Executive Office for
> Immigration Review, he or she has already
> been adjudicated as an adult or a juvenile
> within the jurisdiction of the criminal
> court; the Immigration Court need not enter
> into this consideration and is free to apply
> section 101(a)(48) of the Act.  Whether or
> not a state court adjudicates an alien's
> criminal behavior in juvenile proceedings
> falls outside of our jurisdiction . . . .

We agree.  Neither we nor the BIA have jurisdiction to
determine how a state court should adjudicate its defendants.
Once adjudicated by the state court, as either a juvenile or an
adult, we are bound by that determination.

It is true that if a juvenile is prosecuted under
foreign laws, the BIA will apply the FJDA to determine whether
he had a juvenile delinquency or an adult "conviction" for
immigration purposes.  <u>See, e.g.</u>, <u>Matter of De La Nues</u>, 18 I. &
N. Dec. 140 (BIA 1981); <u>Matter of Ramirez-Rivero</u>, 18 I. & N.
Dec. 135 (BIA 1981).  The petitioner urges us to expand that
ruling to cover juveniles prosecuted under state laws, and
invites us to adopt a federal standard for determining if a
petitioner who commits an offense prior to his eighteenth
birthday has a "conviction" for immigration purposes.  The plain
language of the statute forbids us from adopting such a

-10-

standard.  If Congress had wanted the INS to follow the FJDA at all times, it would have so stated.  We hold that this petitioner has a "conviction" as defined by INA § 101(a)(48).

**B.   Does this violate the petitioner's right to equal protection?**

The petitioner next argues that failure to apply the FJDA violates his right to equal protection.  He claims that similarly situated persons--persons of the same age, who commit the same offense--will be treated differently depending on where they commit the offense.  This is quite a stretch for the equal protection doctrine.

There can be no doubt that aliens are entitled to equal protection of the law.  Sugarman v. Dougall, 413 U.S. 634, 641 (1973); Herrera-Inirio, 208 F.3d at 306; Almon v. Reno, 192 F.3d 28, 31 (1st Cir. 1999), cert. denied, 121 S. Ct. 83 (2000).  We apply a rational-basis review to this equal protection analysis.  See Heller v. Doe, 509 U.S. 312, 319 (1993); Almon, 192 F.3d at 31.  This is a "minimal standard of review," and the distinction "must be upheld if it is rationally related to a legitimate governmental purpose."  Almon, 192 F.3d at 31.  We also note that "the government need not actually articulate at any time the purpose or rationale supporting its classification."  Id.

-11-

Under this minimal standard of review, we hold that there is no violation of equal protection and it is entirely rational for the BIA to rely on the law of the convicting state to determine whether a juvenile has been convicted as an adult. We have held that the definition of a "conviction" as defined in § 101(a)(48) "applies even if both the predicate offense and the penalty therefor are creatures of state law." Herrera-Inirio, 208 F.3d at 306. Under the facts and circumstances of this case, it is beyond our jurisdiction to determine whether a state court adjudicates its criminal defendants as adults or juveniles. Once the determination is made, we are thereby bound.

The Full Faith and Credit Clause of the Constitution provides:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S. Const. art. IV, § 1. Congress passed a statute implementing the Full Faith and Credit Clause, see 28 U.S.C. § 1738, which states, inter alia, that

> [s]uch Acts, records and judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and

-12-

Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

Id.

The petitioner argues that the BIA must apply the FJDA rather than the laws of the convicting state to avoid disparate treatment of juveniles based on where they are prosecuted. We disagree. Under our dual system of criminal justice, there are innumerable instances where the sentence of a convicted defendant will be lesser or greater depending on where the defendant is tried, in one state or another or, as here, in a federal court or a state court. The most drastic penalty of all--the death penalty--depends on where the crime has been committed. Disparate treatment of those accused of a crime is an inevitable concomitant of separate federal and state jurisdictions.

We have given greater weight to the laws of the convicting state than to a comparable federal law. United States v. Restrepo-Aguilar, 74 F.3d 361, 365 (1st Cir. 1996) ("hold[ing] that a state drug offense is properly deemed a 'felony' . . . if the offense is classified as a felony under the law of the relevant state, even if the same offense would be punishable only as a misdemeanor under federal law").

There is no merit in the petitioner's equal protection claim. It was entirely rational for the BIA to rely on the law of the convicting state to determine whether a juvenile has been convicted as an adult.

## III.

For the reasons stated above, we conclude that the BIA correctly determined that the petitioner was "convicted" for immigration purposes and that his right to equal protection was not violated. Therefore, **we affirm the order of the BIA, and the petition for review is denied and dismissed**.