# United States Court of Appeals
## For the First Circuit

No. 12-2401

COURTNEY WAYNE LECKY,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW FROM AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Selya and Thompson,
<u>Circuit Judges</u>.

Glen L. Formica, with whom Formica Williams, P.C. was on brief, for petitioner.
Matthew B. George, Trial Attorney, Office of Immigration Litigation, with whom Stuart F. Delery, Principal Deputy, Assistant Attorney General and Lyle D. Jentzer, Senior Litigation Counsel, Office of Immigration Litigation were on brief, for respondent.

July 9, 2013

**HOWARD, Circuit Judge**.  Courtney Lecky, a citizen and native of Jamaica, petitions this court for review of his removal order.  The Board of Immigration Appeals ("BIA") affirmed Lecky's removability for having committed an aggravated felony offense.  We deny the petition.

## I.

Lecky entered the United States in 1996 as a lawful permanent resident.  In June 2006, the state of Connecticut charged Lecky with committing robbery and criminal assault for taking property from an individual outside of a Dunkin' Donuts in Stamford, Connecticut.  The state later changed the charged offense to second-degree larceny, see Conn. Gen. Stat. § 53a-123(a)(3), to which Lecky pleaded guilty under the Alford doctrine in November 2006.[1]  Although Lecky was seventeen at the time, he was convicted as an adult and sentenced to two years and a day of incarceration and five years of special parole.

In February 2012, the Department of Homeland Security ("DHS") initiated removal proceedings against Lecky, alleging that Lecky was removable because he had been convicted of an aggravated felony, specifically a theft offense.  In May 2012, Lecky appeared before an immigration judge ("IJ") and denied the charge of removability.  The IJ sustained the charge.

---

[1] This doctrine allows a defendant to plead guilty without admitting the truth of any or all of the facts essential to the conviction.  See North Carolina v. Alford, 400 U.S. 25, 37 (1970).

Lecky filed an application for cancellation of removal under 8 U.S.C. § 1229b, arguing that his conviction was not an aggravated felony that rendered him ineligible for cancellation of removal. Meanwhile, DHS added a second charge of removability against Lecky: conviction of a "crime of violence" aggravated felony based on the same Connecticut second-degree larceny conviction. At a July 2012 hearing, the IJ sustained the second charge, pretermitted Lecky's application for cancellation, and ordered Lecky removed to Jamaica.

Lecky appealed this decision to the BIA, again claiming that his conviction for second-degree larceny under Connecticut state law was not an aggravated felony as defined by federal statutes. See 8 U.S.C. § 1101(a)(43)(G) (defining "theft offense"); 18 U.S.C. § 16 (defining "crime of violence"). He also argued that he should not have been eligible for removal because he was under eighteen at the time of conviction, and furthermore that an Alford plea cannot subject an alien to removal.

The BIA rejected each of Lecky's arguments. First, relying on Second Circuit precedent, it concluded that Connecticut larceny in the second degree is a theft offense aggravated felony. See Abimbola v. Ashcroft, 378 F.3d 173 (2d Cir. 2004) (holding that third-degree larceny under Connecticut law qualifies as a theft offense aggravated felony); Almeida v. Holder, 588 F.3d 778 (2d

Cir. 2009) (reaching the same conclusion for second-degree larceny under Connecticut law).

As to Lecky's conviction for a crime of violence, the BIA looked to see whether the offense, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). The BIA noted that Lecky was convicted under paragraph 53a-123(a)(3) of the state statute, which specifically applies when property "is taken from the person of another." It then cited Connecticut case law stating that "a risk of injury invariably accompanies" this form of larceny, and that it poses "a serious potential source of harm." State v. Wright, 716 A.2d 870, 878 (Conn. 1998). Based on that language, the BIA held that Lecky's conviction under paragraph 53a-123(a)(3) qualified as a crime of violence. It buttressed this reasoning with First Circuit opinions that reached similar conclusions for analogous crimes. See, e.g., United States v. De Jesus, 984 F.2d 21, 24 (1st Cir. 1993) (holding that larceny from the person, under Massachusetts law, qualifies as a "crime of violence" under the career offender guideline).

The BIA also rejected Lecky's argument that he should have been treated as a juvenile offender for immigration purposes, citing First Circuit precedent as well as its own case law. See Vieira García v. I.N.S., 239 F.3d 409, 413 (1st Cir. 2001)

-4-

(rejecting the argument that federal law should determine whether a minor can be convicted as an adult); <u>Matter of Devison-Charles</u>, 22 I. & N. Dec. 1362, 1372 (BIA 2001) (similar). Finally, it concluded that an <u>Alford</u> plea is a guilty plea, and thus deserves no special treatment when determining whether an alien has been convicted of an aggravated felony. Lecky petitioned this court for review.

## II.

In his petition, Lecky challenges two of the BIA's conclusions: 1) that larceny in the second degree under Connecticut law qualifies as an aggravated felony; and 2) that Lecky was properly and validly convicted as an adult for immigration purposes. These two determinations are both purely legal, and thus we review them de novo, albeit "with deference accorded to [the BIA's] reasonable interpretation of statutes and regulations falling within its bailiwick." <u>Segran</u> v. <u>Mukasey</u>, 511 F.3d 1, 5 (1st Cir. 2007). We afford no deference, however, to the BIA's interpretation of Connecticut state law, as the BIA "is not charged with the administration of these laws." <u>Ming Lam Sui</u> v. <u>I.N.S.</u>, 250 F.3d 105, 112 (2d Cir. 2001).

### 1.    <u>Aggravated Felony</u>

The BIA affirmed two distinct grounds for Lecky's removability, concluding that Connecticut second-degree larceny qualifies as both a theft offense aggravated felony and a crime of

-5-

violence aggravated felony. Since either determination was sufficient to uphold Lecky's order of removal, we limit our analysis to the BIA's conclusion that the statute in question meets the definition of a theft offense without reaching the question of whether it also qualifies as a crime of violence.

Federal law authorizes the deportation of "[a]ny alien who is convicted of an aggravated felony at any time after admission" into the United States. 8 U.S.C. § 1227(a)(2)(A)(iii). The list of qualifying aggravated felonies, see id. § 1101(a)(43), does not precisely correspond to state criminal codes. Therefore, the BIA and courts of appeal must often ascertain whether a particular state law fits within the enumerated aggravated felonies. To carry out this task, we have adopted, with slight modification, the two-step test that courts use to determine whether a state conviction qualifies as a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e), and similar sentencing statutes. See Conteh v. Gonzales, 461 F.3d 45, 54-56 (1st Cir. 2006); see also Taylor v. United States, 495 U.S. 575, 602 (1990) (establishing a "categorical approach" for determining if state convictions qualify as violent felonies).

Under this "modified categorical approach," we first look to see whether "the statute underlying the prior conviction necessarily involves every element of [an aggravated felony]." Conteh, 461 F.3d at 53. If so, the mere fact of conviction

-6-

suffices to prove the conviction of an aggravated felony offense. However, where the underlying statute covers both conduct that fits within the aggravated felony scheme as well as conduct falling outside of that scheme, "the government bears the burden of proving, by clear and convincing evidence derived solely from the record of the prior proceeding, that (i) the alien was convicted of a crime and (ii) that crime involved every element of one of the [aggravated felony] offenses." Id. at 55. When a statute includes non-aggravated felony conduct, we refer to that statute as "divisible."

One of the enumerated aggravated felonies for which an alien may be deported is "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year."[2] 8 U.S.C. § 1101(a)(43)(G). The BIA has concluded that a "theft offense" occurs "whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." Matter of V-Z-S-, 22 I. & N. Dec. 1338, 1346 (BIA 2000). We accept this definition, as it is neither "arbitrary, capricious, [n]or manifestly contrary to the statute." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984); see Vásquez v. Holder, 635 F.3d 563, 567-68 (1st Cir. 2011)

---

[2] There is no dispute that Connecticut second-degree larceny carries with it a sentence of at least one year. See Conn. Gen. Stat. § 53a-35a(7).

-7-

(applying <u>Chevron</u> deference to the BIA's interpretation of its own statutes); <u>see also</u> <u>Almeida</u>, 588 F.3d at 785 (affirming the BIA's interpretation of "theft offense"); <u>Burke</u> v. <u>Mukasey</u>, 509 F.3d 695, 697 (5th Cir. 2007) (per curiam) (adopting a nearly identical definition of the term "theft offense").

Lecky argues that Connecticut second-degree larceny is a divisible statute, since it includes certain actions that do not fit within the BIA's definition of theft offense. The relevant paragraph under which Lecky was convicted states that "[a] person is guilty of larceny in the second degree when he commits larceny, as defined in section 53a-119, and . . . the property, regardless of its nature or value, is taken from the person of another." Conn. Gen. Stat. § 53a-123(a)(3). Under section 53a-119, "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." <u>Id.</u> § 53a-119. Lecky does not argue that this language, read on its own, encompasses non-theft offenses. Instead, Lecky focuses all of his attention on a non-exhaustive list of example offenses listed in section 53a-119. According to Lecky, several of the example offenses in that list -- including "mutilat[ing] a book or other archival library material," <u>id.</u> § 53a-119(12)(B), "obtain[ing] . . . wireless radio communications, <u>id.</u> § 53a-119(15), and "obtain[ing] property from [another] person . . . by

-8-

knowingly installing or reinstalling any object in lieu of an air bag," id. § 53a-119(16) -- do not constitute theft offenses as defined by the BIA, and therefore the BIA erred in determining that Connecticut second-degree larceny is a categorical theft offense.

There are two problems with Lecky's argument. First, we are not convinced that this list is relevant to determining the elements of Lecky's offense. While there is no doubt that all of these example offenses constitute some form of larceny under Connecticut law (the statute plainly says so), Lecky was not charged with generic larceny, but rather with taking property from the person of another under paragraph 53a-123(a)(3). It is difficult to fathom how one could commit air bag fraud or wireless radio theft from the person of another, yet Lecky is asking us to assume that impossibility when analyzing the elements of his charged crime. Since the list of example offenses clearly does not apply wholesale to paragraph 53a-123(a)(3), the list is of limited value in determining what conduct falls under that provision.

Moreover, even if these example offenses are relevant to defining paragraph 53a-123(a)(3), they all fit squarely within the BIA's formulation of "theft offense." The BIA has made it clear that a theft offense requires the intent to deprive an owner of property rights, but such deprivation need not be permanent nor total. See Matter of V-Z-S-, 22 I. & N. Dec. at 1345-46. All of the examples found in section 53a-119 involve both a deprivation of

-9-

ownership rights and an intent to effectuate that deprivation. See Abimbola, 378 F.3d at 180 ("The most reasonable construction of section 53a-119 includes reading the intent to deprive requirement into all of the subsections."). That is enough to satisfy the BIA's definition of a theft offense.

Nor do we agree with Lecky that the example offenses in section 53a-119 include "de minimis deprivation[s] of ownership interests." Matter of V-Z-S-, 22 I. & N. Dec. at 1346 ("Not all takings of property, however, will [qualify as theft offenses] because some takings entail a de minimis deprivation of ownership interests."). They all appear to touch on meaningful ownership rights, and Lecky has provided no authority to the contrary.

We need not elaborate this point further. The Second Circuit, which has long experience and profound expertise in Connecticut law, in two well-reasoned opinions has held that Connecticut's second-degree larceny and third-degree larceny offenses both qualify as theft offenses under 8 U.S.C. § 1101(a)(43)(G). See Almeida, 588 F.3d at 788; Abimbola, 378 F.3d at 180. Like the BIA, we consider these cases both on point and persuasive. The Second Circuit has considered variations on Lecky's argument, and rejected them, and he has not convinced us to part ways with those opinions. We conclude that Connecticut General Statute § 53a-123(a)(3) is a categorical theft offense, and

therefore that Lecky's conviction alone suffices to establish a conviction of a theft offense aggravated felony.

        2.        <u>Lecky's Status at Conviction</u>

Lecky's second argument -- that his conviction as an adult was invalid because he was only seventeen at the time of his plea -- is entirely foreclosed by our decision in <u>Vieira García</u>, 239 F.3d at 409. In that case, we decided that "[n]either we nor the BIA have jurisdiction to determine how a state court should adjudicate its defendants. Once adjudicated by the state court, either as a juvenile or an adult, we are bound by that determination." <u>Id.</u> at 413; <u>see also</u> 28 U.S.C. § 1738. We are similarly bound by our prior precedent, making Lecky's argument a non-starter. <u>See</u> <u>San Juan Cable LLC</u> v. <u>P.R. Tel. Co.</u>, 612 F.3d 25, 33 (1st Cir. 2010) ("[N]ewly constituted panels in a multi-panel circuit court are bound by prior panel decisions that are closely on point.").

**III.**

For the foregoing reasons, we **<u>deny</u>** Lecky's petition.