# United States Court of Appeals
## For the First Circuit

No. 15-2453

EVANDRO DE LIMA,

Petitioner,

v.

JEFFERSON B. SESSIONS, III,
Attorney General of the United States,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Kayatta, Selya, and Lipez,
Circuit Judges.

Patrick Long for petitioner.
Brianne Whelan Cohen, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, with whom Benjamin C. Mizer, Principal Deputy Assistant Attorney General, John S. Hogan, Assistant Director, and David H. Wetmore, Trial Attorney, were on brief, for respondent.

August 16, 2017

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Jefferson B. Sessions, III has been substituted for former Attorney General Loretta E. Lynch as the respondent.

**KAYATTA**, **Circuit Judge**.  Under the Immigration and Nationality Act ("INA"), "[a]ny alien who is convicted of an aggravated felony at any time after admission" is eligible for removal.  8 U.S.C. § 1227(a)(2)(A)(iii).  One type of aggravated felony under the INA is "a theft offense (including receipt of stolen property) . . . for which the term of imprisonment [is] at least one year."  Id. § 1101(a)(43)(G).  In finding petitioner Evandro De Lima eligible for removal, the Board of Immigration Appeals ("BIA") concluded that third-degree larceny under Connecticut law, Conn. Gen. Stat. § 53a-124, is one such offense.  For the following reasons, we uphold that finding.

## I.

De Lima is a native and citizen of Brazil.  He became a lawful permanent resident of the United States in 2011, three years before he was convicted of third-degree larceny under section 53a-124 of the Connecticut General Statutes.[1]  In March 2015, removal proceedings commenced against De Lima on the basis that his conviction was for a "theft offense" within the meaning of 8 U.S.C. § 1101(a)(43)(G) and was therefore an "aggravated felony" that rendered him eligible for removal.  Id. § 1227(a)(2)(A)(iii).

---

[1] De Lima was also convicted of fourth-degree larceny under Connecticut law, Conn. Gen. Stat. § 53a-125, for a separate larceny.  That conviction, however, was subsequently vacated and played no part in De Lima's removal proceedings.

Section 53a-119 of the Connecticut General Statutes provides that a person commits larceny "when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." Conn. Gen. Stat. § 53a-119. Larceny "includes, but is not limited to," things like "embezzlement," id. § 53a-119(1); "[o]btaining property by false pretenses," id. § 53a-119(2); "[o]btaining property by false promise," id. § 53a-119(3); "defrauding a public community," id. § 53a-119(6); "theft of services," id. § 53a-119(7); "library theft," including "mutilat[ing] a book or other archival library materials . . . so as to render it unusable or reduce its value," id. § 53a-119(12); "theft of utility service," including "wireless radio communications," id. § 53a-119(15); and "air bag fraud," whereby a person fraudulently "obtains property from such other person or a third person by knowingly selling, installing or reinstalling any object, including any counterfeit air bag or nonfunctional air bag . . . in lieu of an air bag that was designed in accordance with federal safety requirements," id. § 53a-119(16).

Larceny comes in several degrees under Connecticut law. To establish the degree relevant here (third-degree larceny), the state must prove one of the following additional factors:  (a) the offender stole a motor vehicle worth ten thousand dollars or less; (b) "the value of the property or service exceeds two thousand

dollars"; (c) "the property consists of a public record, writing or instrument kept, held or deposited according to law with or in the keeping of any public office or public servant"; or (d) "the property consists of a sample, culture, microorganism, specimen, record, recording, document, drawing or any other article, material, device or substance which constitutes, represents, evidences, reflects or records a secret scientific or technical process, invention or formula or any phase or part thereof," as "secret" is defined therein.  Id. § 53a-124.

In an oral decision on April 10, 2015, an immigration judge found De Lima removable and ordered him removed.  De Lima timely appealed to the BIA.  Before the Board, he argued that section 53a-124 is broader than the definition of a "theft offense" under the INA, and therefore cannot categorically count as an aggravated felony.  Specifically, he claimed that the federal definition of a generic "theft offense" requires permanent intent to deprive another of property, and the Connecticut statute does not, both because it criminalizes theft of property without the intent to permanently deprive the owner of the property, and because it criminalizes theft of services.  Therefore, reasoned De Lima, it is possible for a person to be convicted under section 53a-124 for something that would not be considered a "theft offense" under the federal definition.

The BIA rejected De Lima's claims and dismissed his appeal.  De Lima then timely petitioned our court for review.  We review purely legal challenges like those raised here de novo, though we accord deference to the BIA's "reasonable interpretation of statutes and regulations falling within its bailiwick."  Segran v. Mukasey, 511 F.3d 1, 5 (1st Cir. 2007).

## II.

Because the INA's list of aggravated felonies, see 8 U.S.C. § 1101(a)(43), does not perfectly correspond to state criminal codes, "the BIA and courts of appeal must often ascertain whether a particular state law fits within the enumerated aggravated felonies."  Lecky v. Holder, 723 F.3d 1, 4 (1st Cir. 2013).  To do so, we apply the so-called "categorical approach," which "looks to the statutory definition of the offense of conviction, not to the particulars of the alien's behavior."  Mellouli v. Lynch, 135 S. Ct. 1980, 1986 (2015); see Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013).  In substance, we identify the elements of the state offense for which the person was previously convicted; we identify, to a reasonable possibility, the minimum conduct that the state would have deemed to have satisfied those elements; and then we ask whether that conduct would also satisfy one of the INA's listed "generic" aggravated felonies.  Moncrieffe, 133 S. Ct. at 1684-85; see Esquivel-Quintana v. Sessions, No. 16-54, 2017 WL 2322840, at *4 (U.S. May 30, 2017).

Consistent with that approach, De Lima advances three arguments for finding that his Connecticut conviction is not a conviction for a "theft offense" because the range of conduct sufficient to sustain a conviction for third-degree larceny under Connecticut law is broader than that which constitutes a "theft offense" under the INA. We address each argument in turn.

**A.**

De Lima argues, first, that section 53a-124 is overbroad because it imposes liability for takings of property even by one who does not intend to deprive another permanently of the property, as evidenced by the statute's imposition of criminal liability for mutilating a library book, replacing a car's airbags with something else, or intercepting wireless radio communications.

This argument runs into our holding in Lecky. There, the petitioner challenged whether his conviction under Connecticut's second-degree larceny statute, Conn. Gen. Stat. § 53a-123, could be cited as a conviction for a "theft offense" subjecting him to removal under the INA. Lecky, 723 F.3d at 4. Like its third-degree larceny statute, Connecticut's second-degree larceny statute incorporates the definition of larceny contained in section 53a-119. See Conn. Gen. Stat. § 53a-123. Like De Lima, the petitioner in Lecky argued that the generic "theft offense" under the INA does not reach temporary deprivations of property, yet the Connecticut statute does, as evidenced by its inclusion of

library theft, airbag fraud, and obtaining wireless radio communications. Lecky, 723 F.3d at 5. We observed that where a person has been convicted for theft of property, "[t]he BIA has made it clear that a theft offense requires the intent to deprive an owner of property rights, but such deprivation need not be permanent nor total." Id. at 6 (citing Matter of V-Z-S-, 22 I. & N. Dec. 1338, 1345-46 (B.I.A. 2000)). Finding the BIA's interpretation of the INA reasonable, and noting that the Second Circuit had done so as well in its decisions in Abimbola v. Ashcroft, 378 F.3d 173 (2d Cir. 2004), and Almeida v. Holder, 588 F.3d 778 (2d Cir. 2009), we deferred to the BIA and rejected the petitioner's argument. See Lecky, 723 F.3d at 5-6 (citing Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984)).

De Lima urges us to find Lecky no longer controlling in light of the Supreme Court's recent decisions in Moncrieffe and Mellouli. See Holder v. Sessions, 848 F.3d 500, 502 (1st Cir. 2017) (citing, inter alia, United States v. Carter, 752 F.3d 8, 18 n.11 (1st Cir. 2014)) (recounting the exception to stare decisis whereby intervening pronouncements from the Supreme Court undermine an existing panel decision). He argues that these recent cases indicate that the court in Lecky erred by deferring to the BIA's interpretation of "theft offense" under the INA. Instead, argues De Lima, Moncrieffe and Mellouli show either that the BIA's

- 7 -

decision in V-Z-S- deserves less deference, or that the BIA unreasonably interprets the INA anytime it finds that a generic offense is broader than the common-law version of that offense.

De Lima's argument concerning Lecky and the degree of deference we accord the BIA takes two forms. The first, most clearly articulated in De Lima's opening brief, is that post-Lecky Supreme Court decisions suggest that the BIA should default to the common law unless Congress expressly indicates otherwise. But in Taylor v. United States, 495 U.S. 575 (1990), the Supreme Court expressly rejected the argument "that Congress meant to include only a special subclass of [generic offenses]" like "those that would have been [the generic offenses] at common law." Id. at 598. There is nothing in Moncrieffe, Mellouli, or any other intervening Supreme Court decision that suggests that Taylor is no longer good law or does not apply in this context; in fact, Moncrieffe itself relies on Taylor in explicating the categorical approach that applies to cases like this one, and Mellouli, in turn, relies on Moncrieffe to do the same. See Mellouli, 135 S. Ct. at 1986 (citing Moncrieffe, 133 S. Ct. at 1684–85); Moncrieffe, 133 S. Ct. at 1684–85 (citing Gonzales v. Duenas-Alvarez, 549 U.S. 183, 186 (2007) (citing Taylor, 495 U.S. at 599–600)).

The second form of this argument, more fully fleshed out in De Lima's reply brief and at oral argument, is that Lecky should not control the outcome of this case because Moncrieffe and

Mellouli require that the BIA construe narrowly the ambiguous generic offenses in the INA. In substance, this is an argument that these two cases demonstrate that the rule of lenity must always trump deference in defining precisely what a "theft offense" is under the INA. For three reasons, we disagree.

First, neither Moncrieffe nor Mellouli addresses the subject of the interplay between deference and lenity in construing a provision of the INA. The Court in Moncrieffe confronted the BIA's interpretation of a state statute, not the INA itself. Chevron was therefore not implicated, so no deference was afforded to the BIA's interpretation when the Court stated that "ambiguity in criminal statutes referenced by the INA must be construed in the noncitizen's favor." Moncrieffe, 133 S. Ct. at 1693 (citing Carachuri-Rosendo v. Holder, 560 U.S. 563, 581 (2010), and Leocal v. Ashcroft, 543 U.S. 1, 11 n.8 (2004)). Similarly, lenity did not replace Chevron deference in Mellouli. Rather, deference simply proved to be unwarranted in Mellouli because the BIA's interpretation of the interplay between the INA, the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801-971, and Kansas state law did not make any sense. See Mellouli, 135 S. Ct. at 1989.

Second, to the extent that De Lima's argument is that lenity (or some form of it) plays a role in construing provisions of the INA that trigger deportation or removal, that role is well

- 9 -

established and long predates Lecky. See, e.g., Kawashima v. Holder, 565 U.S. 478, 489 (2012); Leocal, 543 U.S. at 11 n.8; INS v. St. Cyr, 533 U.S. 289, 320 (2001); Fong Haw Tan v. Phelan, 333 U.S. 6, 10 (1948) ("We resolve the doubts in favor of [the alien] because deportation is a drastic measure . . . ."). Nothing has changed in that regard post-Lecky, and neither Mellouli nor Moncrieffe suggests otherwise.

Third, under our case law, even when lenity is potentially applicable, it plays no role "unless there is a grievous ambiguity or uncertainty in the language and structure of [a statute], such that even after a court has seize[d] every thing from which aid can be derived, it is still left with an ambiguous statute." Soto-Hernandez v. Holder, 729 F.3d 1, 6 (1st Cir. 2013) (quoting Chapman v. United States, 500 U.S. 453, 463 (1991)). The rule therefore "'cannot apply to contravene the BIA's reasonable interpretation' of an immigration statute where the agency makes use of 'ordinary principles of statutory construction.'" Garcia v. Sessions, 856 F.3d 27, 41 (1st Cir. 2017) (quoting Soto-Hernandez, 729 F.3d at 6). And this is precisely what the BIA did in V-Z-S- when it decided that "a taking of property constitutes a 'theft' [under the INA] whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." V-Z-S-, 22 I. & N. Dec. at 1346.

- 10 -

Lecky thus remains good law in this circuit. As such, it forecloses De Lima's claim that "theft offense" must be construed narrowly to exclude theft committed without intent to permanently deprive. See Lecky, 723 F.3d at 6 (citing V-Z-S-, 22 I. & N. Dec. at 1345-46).

**B.**

De Lima next argues that Connecticut's inclusion of theft of services as larceny renders the crime broader than the generic "theft offense" definition in the INA. The government argues that Lecky also disposes of this argument. We are not so sure. On the one hand, our decision in Lecky expressly approved of the reasoning and holding in Abimbola, in which the Second Circuit found that Connecticut's third-degree larceny offense is categorically a "theft offense" under the INA despite its imposition of criminal liability for theft of services. Lecky, 723 F.3d at 6; Abimbola, 378 F.3d at 178-80. In Lecky, we found that Abimbola and Almeida, 588 F.3d at 789 (holding that second-degree larceny under Connecticut law is categorically a "theft offense" aggravated felony under the INA), were "well-reasoned opinions" that were "both on point and persuasive," and we stated that the petitioner did not "convince[] us to part ways with those opinions." Lecky, 723 F.3d at 6.

On the other hand, as mentioned earlier, Lecky involved a challenge to a conviction under a different statute than the

statute under which De Lima was convicted. And while that difference was immaterial to our disposition of De Lima's first argument, it might be material to our consideration of his second. The petitioner in Lecky was convicted under a portion of Connecticut's second-degree larceny statute that imposes liability for larceny where "the property, regardless of its nature or value, is taken from the person of another." Conn. Gen. Stat. § 53a-123(a)(3). We noted that because the relevant portion of the statute expressly provided for the taking of property "from the person of another," some of the examples provided in section 53a-119 could not possibly constitute second-degree larceny under section 53a-123(a)(3). The definition of third-degree larceny under section 53a-124 lacks the precise language upon which we relied in Lecky and contains a subsection that expressly provides for liability for theft of a "service" whose value "exceeds two thousand dollars," id. § 53a-124(a)(2).[2]

In the end, we need not concern ourselves with either the scope of Lecky's preclusive effect or with precisely defining the metes and bounds of our holding in that case, because we are unpersuaded by De Lima's argument that section 53a-124's

---

[2] The government has not provided Shepard documents that would shed light on whether De Lima was convicted under a particular subsection of section 53a-124. See Conteh v. Gonzales, 461 F.3d 45, 59 (1st Cir. 2006) (citing Shepard v. United States, 544 U.S. 13, 20–23 (2005)).

imposition of criminal liability for theft of services renders the statute too broad to categorically constitute a "theft offense" aggravated felony under the INA. It is true, as De Lima says, that the traditional common-law definition of theft was limited to property, and that services were not considered property in many common-law jurisdictions. But this is the type of argument rejected in Taylor, where the Supreme Court declined to give the generic term "burglary" its common-law meaning because "that meaning [wa]s obsolete or inconsistent with the statute's purpose." 495 U.S. at 594. The Court determined that "burglary" under the Career Criminals Amendment Act of 1986, 18 U.S.C. § 924(e), was not confined to the term's traditional common-law meaning, but rather included the broader array of conduct captured within the definition in the Model Penal Code and prohibited by burglary statutes adopted by numerous states at the time the federal statute was passed. Taylor, 495 U.S. at 597-98, 598 n.8.

So, too, did Congress's use of the term "theft offense" rather than merely the term "theft" imply an intent to reach more broadly than the singular common-law notion of theft. See Ilchuk v. Att'y Gen. of the U.S., 434 F.3d 618, 622 (3d Cir. 2006) ("[I]t was Congress's intent for a 'theft offense' to be more broadly defined than the common-law definition of larceny, and . . . by using that phrase, rather than 'theft,' Congress signaled that it was not presenting an exhaustive list of offenses, but rather, a

- 13 -

definition with broad meaning."). At the time of the enactment of § 1101(a)(43)(G), the Model Penal Code had for several years provided for criminal liability for theft of services, and over half the states had criminalized theft of services under their respective criminal codes. See United States v. Corona-Sanchez, 291 F.3d 1201, 1216 n.6 (9th Cir. 2002) (en banc) (Rymer, J., dissenting in part) (citing American Law Institute, Modern Penal Code and Commentaries II § 223.7, cmt. 1 (1980)), abrogated on other grounds by statute as explained in United States v. Gomez-Mendez, 486 F.3d 599, 604–05 (9th Cir. 2007). Taylor teaches that in using generic terms, like "burglary" in 18 U.S.C. § 924(e), Congress intended to adopt "the generic sense in which the term is now used in the criminal codes of most [s]tates." 495 U.S. at 598. It fairly follows that Congress "intended to incorporate a modern understanding of theft," Abimbola, 378 F.3d at 178–79, in which case it likely intended theft of services to fall within the ambit of the term "a theft offense."

In concluding otherwise, the Ninth Circuit en banc court observed that services are not property. See Corona-Sanchez, 291 F.3d at 1208; accord United States v. Juarez-Gonzalez, 451 F. App'x 387, 392 (5th Cir. 2011) (unpublished opinion). But why this should make any difference is unclear. The Ninth Circuit observed that theft of services was "generally [not] included within the scope of ordinary theft statutes because one's labor is not one's

- 14 -

'property.'"   Corona-Sanchez, 291 F.3d at 1208.   But the more relevant point is that the thieving of services was already a theft offense in most states at the time Congress enacted the relevant provision of the INA.

The Ninth Circuit also observed that "the Supreme Court has carefully maintained the distinction between 'property' and other rights when construing criminal statutes."  Id. (citing McNally v. United States, 483 U.S. 350, 356 (1987), superseded on other grounds by statute as recognized in Cleveland v. United States, 531 U.S. 12, 19-20 (2000)).  Be that as it may, the word "property" does not appear in the INA's provision denominating "theft offense[s]" as aggravated felonies.   See 8 U.S.C. § 1101(a)(43)(G).  And the fact that certain states criminalized as larceny only the theft of property simply does not mean that the laws of many other states criminalizing the theft of services are not also theft offenses.  Otherwise, the Ninth Circuit offered no reason for its holding besides a desire to maintain a national uniformity that does not exist.

We have considered, too, the language of V-Z-S- in which the BIA itself described a taking of property as a theft.[3]  De Lima would read this statement as saying that only a taking of property

---

[3] "[A] taking of property constitutes a 'theft' whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent."  V-Z-S-, 22 I. & N. Dec. at 1346.

can constitute a theft. We see no reason to read the BIA's statement in such a restrictive manner. The question of services versus property was not before the BIA in V-Z-S-. Rather, at issue was the question whether an alien could be said to have been convicted of a "theft offense" by sustaining a conviction under a state law that criminalized the taking of property even absent intent to deprive permanently, traditionally an element of common-law theft. The BIA considered and decided which thefts of property constitute a "theft offense"; it did not, in so doing, construe "theft offense" as including only tangible-property theft crimes.

We therefore hold that Connecticut's third-degree larceny statute's imposition of criminal liability for theft of services does not broaden the offense beyond the limits of a "theft offense" under the INA. See Abimbola, 378 F.3d at 178; cf. Ilchuk, 434 F.3d at 622–23 (finding that Pennsylvania's theft-of-services statute is categorically a "theft offense" aggravated felony under the INA).

### c.

De Lima argues, finally, that his conviction cannot categorically qualify as a conviction for a "theft offense" under 8 U.S.C. § 1101(a)(43)(G) because Connecticut's third-degree larceny statute criminalizes theft by fraud, which the BIA itself does not treat as a "theft offense." See Matter of Garcia-Madruga, 24 I. & N. Dec. 436, 440–41 (B.I.A. 2008) (finding fraud crimes do

not pass the categorical test because theft requires lack of consent, while fraud necessarily involves the acquisition of property by consent involuntarily given). De Lima, though, did not advance this argument before the BIA. The law is clear that "theories not advanced before the BIA may not be surfaced for the first time in a petition for judicial review of the BIA's final order." Pérez Batres v. Lynch, 796 F.3d 157, 160 (1st Cir. 2015) (quoting Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004)); see Mazariegos-Paiz v. Holder, 734 F.3d 57, 62 (1st Cir. 2013); Sousa v. INS, 226 F.3d 28, 31–32 (1st Cir. 2000). This limitation on the scope of our review is jurisdictional. Mazariegos-Paiz, 734 F.3d at 62–63.

At oral argument, counsel suggested that we could nevertheless consider De Lima's argument that a state statute that prohibits theft by fraud is not categorically a theft offense under the INA, because the argument is simply a different approach to the overbreadth challenge that he mounted both before the BIA and in his petition for review. This suggestion is untenable in light of our holding in Ravindran v. INS, 976 F.2d 754 (1st Cir. 1992). There, an immigration judge denied a petitioner's application for asylum because the petitioner did not have a well-founded fear of persecution. Id. at 757. The petitioner appealed to the BIA asserting that the immigration judge was wrong because the petitioner had demonstrated his fear of, and the likelihood he

- 17 -

would suffer, persecution on account of his political opinions. Id. at 760. When the BIA affirmed, the petitioner sought relief in our court, asserting that "the BIA did not consider his claim of persecution on the basis of membership in a particular social group." Id. We noted that it indeed did not, but that its failure was "attributable to the fact that petitioner failed to raise this claim before the BIA," and we accordingly found that we lacked jurisdiction to consider his challenge. Id. at 760–61.

Here too, we are confronted with a challenge that was not presented to the BIA: De Lima contended before the BIA only that the criminal activities proscribed in subsections 7, 12, 15, and 16 of section 53a-119 fell outside the scope of the generic federal definition of a theft offense based on the arguments we have addressed above. Now he wants to argue that one or more different subsections of the Connecticut statute fail to qualify as a theft offense for a different reason.

Telling an agency that subsection A does not qualify as a theft offense for reason X simply does not raise, much less exhaust, the argument that subsection B does not qualify as a theft offense for reason Y. True, both arguments feed into the common ultimate conclusion that a conviction under the broad Connecticut statute is not categorically a theft offense. But if we were to deem the assertion of this ultimate conclusion to be sufficient to exhaust all independent routes to reaching such a conclusion, we

would present both the BIA and the opposing party with an unfair and daunting task. Quite literally, each would have to generate, sua sponte, a list of all of the possible reasons why third degree larceny might not be a theft offense, and then perform a categorical analysis of all eighteen subsections of the Connecticut statute, mapping each reason against each subsection. Even a single such categorical analysis is an arduous task, requiring a close analysis of the specific statutory language put at issue, see Swaby v. Yates, 847 F.3d 62, 65-66 (1st Cir. 2017); of the case law interpreting that language, see United States v. Fish, 758 F.3d 1, 4-5 (1st Cir. 2014); and of the extent to which the elements made relevant by that language match or fall within what the BIA has reasonably interpreted the INA's "theft offense" provision to include, see Descamps v. United States, 133 S. Ct. 2276, 2283 (2013) (citing Taylor, 495 U.S. at 600). The ensuing categorical evaluation is often difficult and time consuming. See United States v. Tavares, 843 F.3d 1, 19 (1st Cir. 2016) ("The result is a Rube Goldberg jurisprudence of abstractions piled on top of one another in a manner that renders doubtful anyone's confidence in predicting what will pop out at the end."). In this very case, for example, considering just the property and services provisions of selected subsections within section 53a-119 occupies over two-thousand words of analysis, even with the benefit of Lecky's spade work addressing one aspect of that consideration.

The reasons why one subsection may broaden the elements of the offense beyond the federal definition, while another subsection does not, can be as varied as the number of subsections to be examined.  The analysis can be even more complicated, too, in cases (unlike this one) where the parties do not stipulate to the indivisibility of the statute in question.  See Moncrieffe, 133 S. Ct. at 1684 (observing that a modified categorical approach applies to "state statutes that contain several different crimes, each described separately");  Mathis v. United States, 136 S. Ct. 2243, 2256-57 (2016) (instructing that, to determine whether a statute contains multiple different crimes with different elements or one crime that can be committed by multiple different means, a court should look to the statute, to the state's case law, and, if those sources cannot answer the question, to the relevant charging instrument in the case before the court).

There is no precedent in our circuit that even remotely supports defining exhaustion so loosely as to encompass De Lima's newly minted challenge.  Rather, Ravindran and the subsequent similar cases we have cited, above, dictate the contrary:  a reasonably elaborate argument that requires substantial analysis and development to support a general proposition is not exhausted merely because a party raises an entirely independent argument to support that same general proposition.

In the absence of First Circuit precedent providing grounds for us to review this belated challenge, our dissenting colleague relies on the Second Circuit's decision in Gill v. INS, 420 F.3d 82 (2d Cir. 2005). Gill rested on two grounds: a loose reading of the statutory exhaustion requirement, and a broad reading of the court's power to override such requirements to avoid "manifest injustice." Id. at 86-88. The latter ground has since been implicitly rejected by the Supreme Court. See Grullon v. Mukasey, 509 F.3d 107, 115 (2d Cir. 2007) (citing Bowles v. Russell, 551 U.S. 205 (2007)). And no other circuit has since applied Gill's loose construction of the statutory exhaustion requirement of 8 U.S.C. § 1252(d)(1). Moreover, Gill involved an argument that was, in the court's words, logically "subsidiary" to the argument made before the BIA, 420 F.3d at 87, not an alternative argument that stood on its own legs (as De Lima seeks to advance).

In deciding what arguments have been suitably developed before our own court, we regularly decline to assume for ourselves the burdens that De Lima would have us impose on the BIA. For example, in United States v. Whindleton, 797 F.3d 105 (1st Cir. 2015), we considered whether Assault with a Dangerous Weapon ("ADW") under Massachusetts General Laws ch. 265, § 15B(b), categorically qualified as a "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Whindleton, 797

- 21 -

F.3d at 107. We found that it did, id. at 116, but expressly declined to consider one possible argument to the contrary--that Massachusetts's ADW might not be a "violent felony" because the least culpable mental state necessary to sustain a conviction might be less culpable than that of a violent felony--because "the defendant [had] not developed, or even expressly asserted, any argument" to that effect, id. at 116 n.12. Similar examples abound in other types of cases. See, e.g., Eldridge v. Gordon Bros. Grp., Nos. 12-2311 & 16-1929, 2017 WL 2981797, at *12 (1st Cir. July 13, 2017) (finding waiver in a civil case where a mismanagement-based breach-of-implied-warranty claim was raised and argued, but only arising out of an unjustified liquidation, not also as to the mismanagement of stores); Coningford v. Rhode Island, 640 F.3d 478, 482–83 (1st Cir. 2011) (finding a habeas corpus petitioner failed to exhaust a claim in state court, and rejecting the argument "that by arguing generally that the wayward introduction of prior bad acts evidence rendered his trial unfair, [petitioner] presented the state court with a claim based on a 'particular right' guaranteed by the Constitution"); United States v. Slade, 980 F.2d 27, 31 (1st Cir. 1992) (applying the raise-or-waive rule in a criminal case, noting that "a party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court").

We observe, too, that the dissent's attempt to mitigate the unfortunate harm caused by a procedural defalcation leads it to intrude on the BIA's expertise even as it professes not to do so. The dissent projects onto the BIA's decision in Garcia-Madruga a finding that no fraudulent taking can be a "theft offense" under the INA. But the BIA in Garcia-Madruga determined only that fraudulent takings are "ordinarily" not theft offenses. Garcia-Madruga, 24 I. & N. Dec. at 440. The decision in that matter sheds insufficient light on whether the BIA, were it presented with the argument De Lima now raises before us, might interpret "theft offense" under the INA to include the fraudulent takings proscribed in section 53a-119 on the basis that the INA's definition of consent differs from Connecticut's. See id. at 440 n.5 (declining to "discount the possibility that the theft and fraud aggravated felony compartments are not watertight such that certain crimes . . . may constitute both a theft offense and one 'involv[ing] fraud'" (alteration in original)). Indeed, the BIA's holding in Matter of Ibarra, 26 I. & N. Dec. 809, 811–13 (BIA 2016), shows that the INA has come to such a conclusion before. And the mere fact that section 53a-119 criminalizes a number of types of fraudulent takings likewise has little to do with whether one or more of those types of fraudulent takings would not constitute a "theft offense."

Finally, the dissent offers a series of policy reasons why exhaustion of theories of relief should not be required. In a perfect world, Congress might be persuaded by some of these reasons. It might, for example, limit exhaustion requirements to arguments that turn on matters with regard to which the INA has special expertise. Or it might make an exception for really strong arguments that would change a case's result. But we do not have the authority to adopt these changes to the law on our own accord.

De Lima also advances quite a different twist on his theft-by-fraud argument. Returning to his preserved argument that theft of services is not a theft offense, he argues that if theft of services has a home in the INA's category of aggravated felonies, it is more like theft by fraud than it is like theft generally, and theft by fraud is an aggravated felony under the INA only when the victim's loss is more than $10,000, see 8 U.S.C. § 1101(a)(43)(M)(i). Whether De Lima has preserved his ability to marshal this point in support of his clearly preserved argument that theft of services is not a theft offense, we need not decide. What distinguishes theft by fraud from theft of property is not the object of the theft. Rather, it is the means by which the theft is accomplished. Moreover, when Congress creates a general category of "theft offense" and a special category for one type of theft (theft by fraud), the logical inference is that other types of theft not specially dealt with remain in the general category.

## III.

For the foregoing reasons, we uphold the BIA's decision.

De Lima's petition for review is <u>denied</u>.


**-Dissenting Opinion Follows-**

**LIPEZ**, **Circuit Judge**, **dissenting.** I agree with the majority that De Lima's overbreadth theory is unavailing insofar as he argues that the term "theft offense" under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(43)(G), does not include temporary deprivations of property or theft of services. I disagree, however, that we lack jurisdiction to consider his claim that third-degree larceny under Connecticut law does not qualify as a removable offense under the INA because it includes within its scope at least some forms of fraud that do not satisfy the federal definition of a generic "theft offense." To the contrary, our precedent on the INA's exhaustion requirement permits us to address De Lima's fraud overbreadth claim and achieve the proper resolution of this case.

## I.

My colleagues maintain that De Lima's fraud-based claim is foreclosed by our caselaw because that overbreadth theory was not argued to the BIA. They rely on Ravindran v. INS, 976 F.2d 754, 760-61 (1st Cir. 1992), where the panel held that it lacked jurisdiction to consider a claim of persecution different from the theory of persecution presented to the BIA. Specifically, we concluded that the petitioner's assertion to us that he would face persecution on account of his membership in a particular social group was unexhausted because he claimed to the BIA only that he

- 26 -

faced persecution on account of his political opinions.  Id. at 760.

        In applying Ravindran to the very different circumstances of this case, the majority has adopted an unnecessarily restrictive view of the exhaustion requirement. Moreover, where, as here, the petitioner presents a compelling claim on the merits, refusing to consider his challenge to removal is inconsistent with "the fundamental interests at stake." Gill v. INS, 420 F.3d 82, 87 (2d Cir. 2005).  I thus begin with the merits of petitioner's fraud claim before explaining why we have jurisdiction to provide the relief to which he is entitled.

## A. Connecticut's Prohibition on Theft by Fraud

        As the majority explains, the success of De Lima's petition for review turns on whether his prior conviction under Connecticut law matches up, under the "categorical approach," with a "theft offense" under the INA, which was the basis of the removal proceedings initiated against him.  See 8 U.S.C. § 1101(a)(43)(G). Our inquiry does not focus on De Lima's specific conduct, but rather, on whether the elements of the state offense of conviction satisfy the elements of the pertinent aggravated felony in the INA list.  See Esquivel-Quintana v. Sessions, 137 S. Ct. 1562, 1568 (2017) ("Petitioner's state conviction is . . . an 'aggravated felony' under the INA only if the least of the acts criminalized

- 27 -

by the state statute falls within the generic federal definition of [a theft offense].").

A reasonable reading of Connecticut's third-degree larceny statute, see Conn. Gen. Stat. §§ 53a-119, 53a-124, leaves no doubt that it encompasses at least some crimes that the INA would classify as an "offense that involves fraud or deceit," under 8 U.S.C. § 1101(a)(43)(M)(i), and not a "theft offense" within the meaning of § 1101(a)(43)(G). The BIA has expressly held that the offenses described in these two sections "ordinarily involve distinct crimes," with a theft offense requiring "the taking of property without consent" and a fraud offense "ordinarily involv[ing] the taking or acquisition of property with consent that has been fraudulently obtained." Matter of Garcia-Madruga, 24 I. & N. Dec. 436, 440-41 (BIA 2008) (finding that welfare fraud under Rhode Island law is not an aggravated felony theft offense as defined in § 1101(a)(43)(G)).

In both its general terms and specific examples, the offense of third-degree larceny in Connecticut includes "the taking or acquisition of property with consent that has been fraudulently obtained." Id. at 440 (emphasis added). The state's general larceny definition includes "wrongfully . . . obtain[ing]" the property of another, without the requirement of lack of consent. Conn. Gen. Stat. § 53a-119. In addition, the general provision's list of crimes that constitute larceny includes

- 28 -

offenses that fall explicitly on the fraud side of the BIA's theft-fraud distinction: "[o]btaining property by false promise," id. § 53a-119(3), "defrauding of public community," id. § 53a-119(6), and "[a]ir bag fraud," id. § 53a-119(16). Although the third-degree larceny statute covers only some of the examples listed in § 53a-119,[4] the included crimes are not limited to those that involve the acquisition of property without consent.

Indeed, the government acknowledged at oral argument that Connecticut's third-degree larceny statute includes crimes within its scope that both the BIA and other courts of appeals have characterized as fraud offenses. Yet, government counsel argued -- without citation to any authority -- that Connecticut courts have construed fraud in such a way that "fraud" in Connecticut fits within the generic definition of a theft offense. By way of explanation, she said the Connecticut Supreme Court has held that consent gained by fraud is not knowing consent. Hence, counsel maintained, a taking by fraud in Connecticut qualifies as a categorical "theft offense" under the INA because it involves "the taking of property without consent." Garcia-Madruga, 24 I. & N. Dec. at 440. At a minimum, she suggested, the BIA left open

---

[4] The relevant portion of § 53a-124 states that larceny in the third degree involves the taking, obtaining, or withholding of motor vehicles valued at $10,000 or less; other property or service exceeding two thousand dollars in value; certain public records; and specified scientific or technical materials.

in Garcia-Madruga the question of what constitutes consent, or lack thereof, for purposes of classifying a crime under the INA, and she pointed to the agency's more recent holding that extortionate takings -- which, like fraud, may involve a knowing relinquishment of property -- fit the generic definition. See Matter of Ibarra, 26 I. & N. Dec. 809, 811 (BIA 2016) (stating that, because "consent" in extortion offenses is coerced, it "does not constitute the kind of 'consent' that exempts an offense from aggravated felony treatment under section 101(a)(43)(G) of the Act").[5] The government appears to maintain that it is up to the BIA, in each particular instance, to decide whether a state theft crime involves a lack of consent as contemplated by Congress.

This attempt at analytical gymnastics falls flat. Whatever the precise parameters of "consent" within the context of the INA, the term cannot be stretched so broadly as to entirely eliminate the differences between theft and fraud. By listing the two crimes separately, Congress clearly expressed its view that they are not interchangeable. See Soliman v. Gonzales, 419 F.3d 276, 283 (4th Cir. 2005) ("Where Congress has utilized distinct

---

[5] In Ibarra, the immigration judge had found that a conviction under a California penal statute was not categorically an aggravated felony theft offense "because the statute proscribes generic extortion in addition to generic theft offenses," and generic extortion is defined as "obtaining property 'from another with his consent induced by the wrongful use of force, fear, or threats.'" 26 I. & N. Dec. at 810 (quoting United States v. Becerril-Lopez, 541 F.3d 881, 891 (9th Cir. 2008)).

terms within the same statute, the applicable canons of statutory construction require that we endeavor to give different meanings to those different terms -- here 'fraud' and 'theft.'"). Congress, as the BIA has acknowledged, drew the line at consent. See id. at 282 ("The key and controlling distinction between these two crimes is therefore the 'consent' element -- theft occurs without consent, while fraud occurs with consent that has been unlawfully obtained." (quoted in Garcia-Madruga, 24 I. & N. Dec. at 439)).

Thus, even if Connecticut chooses to label fraud as a form of theft, that state-law choice cannot override Congress's judgment to treat the two types of conduct as different crimes for purposes of removal. "The language of a federal statute must be construed to have the meaning intended by Congress, not the [state] legislature." Drakes v. Zimski, 240 F.3d 246, 248 (3d Cir. 2000); see also Taylor v. United States, 495 U.S. 575, 590 (1990) ("It seems to us to be implausible that Congress intended the meaning of 'burglary' . . . to depend on the definition adopted by the State of conviction."); Drakes, 240 F.3d at 248 ("Pronouncing a flower to be a rose . . . does not necessarily make it one.").

I do understand that "consent" is not a fixed concept, and the BIA's decision in Ibarra illustrates an instance when an intentional relinquishment of property was deemed by the agency to be without consent and, thus, a "theft offense" under § 1101(a)(43)(G). Such a construction of the statute, by the

agency charged with administering it, is entitled to deference so long as it is reasonable. See Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984); Garcia v. Sessions, 856 F.3d 27, 35 (1st Cir. 2017). Thus, if this case turned on whether one particular form of fraud could be construed to include lack of consent as an element, we might need to give the BIA an opportunity to consider the issue before deciding it ourselves.

In this instance, however, the question is whether every crime covered by the Connecticut statute is a removable offense, and the provision plainly sweeps so broadly that we could not defer to the BIA if it concluded that all of the conduct criminalized by the provision qualifies as a generic "theft offense" under the INA. See Mellouli v. Lynch, 135 S. Ct. 1980, 1989 (2015) (holding that, because the BIA's reliance on a state drug-paraphernalia offense as a basis for removal under 8 U.S.C. § 1227(a)(2)(B)(i) "makes scant sense," the BIA approach "is owed no deference under the doctrine described in Chevron"). Not only would such a determination be inconsistent with the line Congress has drawn between consensual and non-consensual takings, but the INA also designates fraud as a removable offense only when the property taken exceeds $10,000 in value. See 8 U.S.C. § 1101(a)(43)(M)(i). A conviction for third-degree larceny in Connecticut will not meet that financial threshold; the offenses covered by § 53a-124 either

include no minimum value for the wrongfully obtained property or specify values of $10,000 or less.  See Conn. Gen. Stat. § 53a-124.

Accordingly, there is simply no insight that we could obtain from the BIA relevant to De Lima's fraud-based overbreadth challenge.  To the contrary, it is clear that, if we addressed that claim, the BIA's order of removal, premised on De Lima's conviction for third-degree larceny under Connecticut law, could not stand.[6]  The majority resists this conclusion, focusing on the BIA's use of the word "ordinarily" in Garcia-Madruga.  As I have explained, however, it is one thing to say that some fraudulent takings -- like extortion -- properly may be classified as theft offenses, and an entirely different thing to say that every fraudulent taking proscribed by the Connecticut statute could be so categorized.  This statute is inescapably overbroad, and it is simply wrong for the majority to suggest that the BIA might -- or could -- conclude that it is not.  Their rejection of my analysis necessarily rests on their view of the exhaustion requirement, to which I now turn.

---

[6] Indeed, the outcome here is so obvious that there is no need to invoke the well-established rule of lenity that, as the majority acknowledges, "plays a role in construing provisions of the INA that trigger deportation or removal." Maj. Op. at 9.  See Fong Haw Tan v. Phelan, 333 U.S. 6, 10 (1948) ("We resolve the doubts in favor of [the alien] because deportation is a drastic measure . . . .").

**B. Exhaustion**

Although I understand how my colleagues have read our precedent to foreclose De Lima's fraud-based overbreadth challenge, their view fails to take into account how the circumstances of this case differ from those underlying most of our exhaustion precedents. The exhaustion requirement only makes sense where, by ignoring it, we would exceed our jurisdiction or violate some principle of administrative law. As I shall explain, neither of those barriers exist here, and the majority's unreasonably strict application of the exhaustion doctrine unnecessarily produces an unjust result.

As a threshold matter, the majority correctly asserts that "[t]he law is clear that 'theories not advanced before the BIA may not be surfaced for the first time in a petition for judicial review of the BIA's final order.'" Maj. Op., § C (quoting Pérez Batres v. Lynch, 796 F.3d 157, 160 (1st Cir. 2015)). Indeed, exhaustion is a statutory requirement, see 8 U.S.C. § 1252(d)(1), and, hence, mandatory. See Gill, 420 F.3d at 85. Ordinarily, then, when an alien fails to present an issue to the BIA, we lack jurisdiction to consider it. Mazariegos-Paiz v. Holder, 734 F.3d 57, 62 (1st Cir. 2013). Thus, if De Lima had not presented an overbreadth theory to the agency, I would have to agree with my colleagues that we could not consider that claim. The statute's overbreadth, however, was the focus of De Lima's argument to the

BIA, and he framed his argument inclusively more than once. See, e.g., Br. to the BIA, at 5 ("The Immigration Judge Erred in Holding that Connecticut Larceny in the Third Degree is an Aggravated Felony"); id. at 7 ("The Connecticut Statute for Third-Degree Larceny is Overbroad and Covers Offenses not Criminalized by the Federal Definition of Theft").

The question before is thus only "the level of specificity at which a claim must have been made to have been 'exhausted' under § 1252(d)(1)." Gill, 420 F.3d at 85. In my view, the answer to that question must take into account the nature of the claim under scrutiny. After all, the primary purpose of the exhaustion requirement is to protect the agency's authority over matters within its area of expertise. See, e.g., Mazariegos-Paiz, 734 F.3d at 63 (stating that the exhaustion requirement "afford[s] the parties the full benefit of the agency's expertise and allow[s] the agency the first opportunity to correct its own bevues"). In determining whether a claim has been properly exhausted, therefore, it is appropriate to consider whether judicial review of that claim would usurp the agency's function. See id. at 62-63.

With that consideration in mind, the agency is unquestionably entitled to the first opportunity to decide issues that depend on facts, particularly when there is an administrative record that includes testimony subject to a credibility

assessment. The validity of a petitioner's claim that he has been, or will be, subject to persecution if removed from the United States is one such issue, and it was the focus in Ravindran, the case on which the majority relies to say that we lack jurisdiction over De Lima's fraud-based overbreadth claim. The panel in Ravindran reasonably rejected the petitioner's effort to switch theories of persecution, as the facts relevant to his original claim of political persecution could be expected to differ from those relevant to his claimed persecution based on membership in a social group. See 976 F.2d at 761 n.5 (describing at length the multiple factual issues implicated by the unpreserved social-group claim); see also, e.g., Ramirez-Matias v. Holder, 778 F.3d 322, 327 (1st Cir. 2015) (holding that petitioner failed to exhaust claim of persecution based on social group where he did not present that theory to the BIA); Silva v. Gonzales, 463 F.3d 68, 72 (1st Cir. 2006) (holding that petitioner did not exhaust his past persecution claim, explaining that the "narrow argument in his appeal to the BIA is not sufficient to allow a broader inquiry now into the IJ's factual determination that Silva did not suffer past persecution").

Here, however, De Lima merely offers an additional legal argument to support his previously made claim that Connecticut's third-degree larceny provision is overbroad as a matter of law. Significantly, as explained above, we would not be "usurp[ing] the

agency's function" in considering this extension of his claim, as there is only one way to answer the pure question of law that he raises. Mazariegos-Paiz, 734 F.3d at 62. Thus, there is no ambiguity implicating possible deference to the agency's judgment. See Chevron, 467 U.S. at 842-43. Moreover, just as importantly, the BIA already has accepted De Lima's argument, holding in Garcia-Madruga that the taking of property "with consent that has been fraudulently obtained" is ordinarily not a generic "theft offense." 24 I. & N. Dec. at 440. We do not disturb the "carefully calibrated balance of responsibilities" embodied in the exhaustion requirement where, as here, the petitioner's reformulated claim involves a legal issue that the agency previously has resolved. Mazariegos-Paiz, 734 F.3d at 63; see also Dale v. Holder, 610 F.3d 294, 301 (5th Cir. 2010) (noting that "administrative exhaustion requires only that federal courts refrain from addressing an immigration issue until the appropriate administrative authority has had the opportunity to apply its specialized knowledge and experience to the matter" (internal quotation marks and brackets omitted)).

My colleagues confusingly highlight the complexity of the categorical analysis and suggest that, with the approach to exhaustion that I consider appropriate, the BIA and the opposing party would need to anticipate unmade arguments. That approach, however, does not require the BIA to address arguments the

petitioner did not expressly bring to the agency, and, hence, there is no basis for asserting that it would impose "an unfair and daunting task" on the BIA or opposing party. The question is whether we treat as exhausted an argument raised to us that is a variation on a legal argument previously raised to the BIA. There is nothing unfair or daunting for the government or for us in addressing such an argument.

How we apply the exhaustion requirement in this case will determine whether De Lima faces mandatory removal based on a clear error of law. Where the purpose of exhaustion will not be advanced and the outcome is so clearly unjust, a strict application of that doctrine is both unwise and unnecessary. The Second Circuit has adopted a sensible approach that remains true to the rationale for exhaustion, concluding that the statutory exhaustion provision, § 1252(d)(1), "bars the consideration of bases of relief that were not raised below, and of general issues that were not raised below, but not of specific, subsidiary legal arguments, or arguments by extension, that were not made below." Gill, 420 F.3d at 86.

My colleagues suggest that I am forced to rely on Second Circuit law because "[t]here is no precedent in our circuit that even remotely supports defining exhaustion so loosely as to encompass De Lima's newly minted challenge." I agree that we have no case adopting the pragmatic, fair approach taken by the Second

Circuit. My point, however, is that we have no law foreclosing such an approach in a case such as this, where the general claim was raised to the BIA, the dispositive issue is one of law, and there is only one permissible outcome. Moreover, my colleagues incorrectly imply that, in addition to endorsing the Second Circuit's reading of the statutory exhaustion requirement, I rely on the Gill court's alternative rationale that courts possess the power to assert jurisdiction to avoid manifest injustice even where there has been a failure to exhaust administrative remedies. See Gill, 420 F.3d at 87. That reasoning is not part of my analysis, which relies solely on a construction of the exhaustion requirement of § 1252(d)(1) -- a task that undeniably belongs to the courts.[7]

Indeed, where the error is so plain, we should feel obliged to undo the BIA's incorrect classification of De Lima's third-degree larceny conviction and the mandatory removal order premised on that finding. The Supreme Court has highlighted the "harsh consequences" that flow from the aggravated felony classification. Moncrieffe v. Holder, 133 S. Ct. 1678, 1682 (2013). Under the INA, the Attorney General may not "grant[] discretionary relief from removal to an aggravated felon, no matter

---

[7] I am frankly puzzled by my colleagues' reference to the "perfect world" where "Congress might be persuaded" by my analysis. Although Congress has imposed the exhaustion requirement, it is the job of the courts to apply that requirement in a fair and sensible manner.

how compelling his case." Id. We should not hesitate to adopt an approach -- permitted by our precedent -- that would avoid unjustly imposing those consequences. As the Second Circuit observed in Gill, while "there is no jurisdiction of the heart, it does not follow that a court must be completely indifferent to the interests at stake when exercising lawful discretion or interpreting general statutory language." 420 F.3d at 87 n.7 (internal quotation marks omitted).

* * *

In sum, "the merits of [De Lima's] . . . argument are clear-cut in his favor, and 'go[] to the very basis for his deportation.'" Gill, 420 F.3d at 88 (quoting Marrero Pichardo v. Ashcroft, 374 F.3d 46, 54 (2d Cir. 2004)). We have the authority to hear his claim, and we should do so. I therefore respectfully dissent from the majority's denial of De Lima's petition for review.